Joseph M. Hazeltine et al., Appellants, v. George W. Weld et al., Respondents.

Defendants stored with J. & U., warehousemen, a quantity of Brazil wood, receiving a warehouse receipt, which stated the charges for storage to be twelve and one-half cents per ton per month, and by the terms of which the contract of storage could be terminated by J. & U. at the end of any month. Plaintiffs thereafter entered into possession of the warehouse under a lease, by the terms of which they assumed all outstanding contracts for storage. Plaintiffs subsequently wrote to J. & U. to remove the wood at the end of the then current month, notifying them that if not removed the charge thereafter would be two dollars per ton per month. This letter was shown to defendants, who claimed that they had the right to have the wood remain in store at the rate specified in the receipt until they sold it, and declined to pay the increased rate. Defendants did not remove the wood. The market-price for storage did not exceed twelve and one-half cents per month. In an action to foreclose plaintiffs' lien for storage, *held*, that permitting the wood to remain in store did not, under the circumstances, create an implied contract on the part of defendants to pay the price stated in plaintiffs' letter; that plaintiffs were not bound to retain the property after the contract was terminated, and would have been justified in removing and depositing it in another warehouse at the risk and expense of the owner; but having retained it, they were simply entitled to charge the market rate for storage.

(Argued March 18, 1878; decided March 26, 1878.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment entered upon the report of a referee.

This action was brought to foreclose a lien, claimed by

plaintiffs as warehousemen, under chapter 738, Laws of 1868.

The property in question was a quantity of Brazil wood, which was stored by defendants, who composed the firm of Weld & Co., in a public warehouse, known as "Kelsey's stores," they receiving therefor the following receipt:

"BROOKLYN, *January* 24, 1871.

"Received from Messrs. Wm. F. Weld & Co., in store No. 4 (Kelsey's), ex ship California, to be held by us in storage and to be delivered upon their order, cargo of Brazil wood, say 30,054 quintals or 1,400 tons, more or less. Charges : Storage per month, twelve and one-half cents a ton of 2,240 lbs., delivered ; labor, receiving and delivering, thirty cents.

"JACKSON & UNDERHILL."

The further facts appear in the opinion.

*Geo. A. Black;* for appellants. Defendants by leaving the wood in store after the termination by notice of their former contract were estopped from denying that they assented. (*Place* v. *McElvain,* 38 N. Y., 99; *Schuyler* v. *Smith,* 51 id., 309; *Despard* v. *Walbridge,* 15 id., 374; 39; *Coil* v. *Planer,* 7 Robt., 413; *Wells* v. *De Leyer,* 1 Daly, *Mack* v. *Burt,* 5 Hun, 28; *McGovern* v. *West. R. R. Co.,* 28 How., 493; *Robinson* v. *Pesant,* 53 N. Y., 421.) The rights of the parties are to be determined by the law of their contract when the notice to defendants was given. (*West. Tr. Co.* v. *Barber,* 56 N. Y., 549.) Plaintiffs were not obliged to seek storage elsewhere for the wood to save defendants expense. (*Dubois* v. *Hermance,* 56 N. Y., 675.)

*Samuel Hand,* for respondents. If plaintiffs had a right to demand the removal of the wood, and it was not, after proper notice, removed, they were bound to make the damages as light as possible. (*Dillon* v. *Anderson,* 43 N. Y., 232; *Hamilton* v. *McPherson,* 28 id., 77; Sedgw. on

Dam., 361; *Hecksher* v. *McCrea*, 24 Wend., 410.) Plain-
tiffs, in the absence of any special agreement giving them a
lien upon the wood, had no lien upon it, unless they acted
in a public capacity, and were under some legal obligation
to receive it on storage at a reasonable rate. (Cross on
Liens, 16· 11 Barb., 41; 8 id., 216; 28 N. Y., 252; 3 Hill,
490.)

ANDREWS, J. The storage receipt, given by Jackson &
Underhill to Weld & Co., contained no express agreement
as to the time during which the Brazil-wood was to remain
in store. The storage was by the terms of the receipt to be
at the rate of twelve and a-half cents a ton per month, and
from this circumstance the referee held that the contract of
storage was terminable by Jackson & Underhill at the end
of any month. There is no exception to this finding, and it
must on this appeal be taken as giving the true construction
of the contract.

The plaintiffs on the 1st day of May, 1872, entered into
possession of the Kelsey stores under a lease from the exec-
utor of the owners, executed in the previous March, and
when the plaintiffs took possession, several hundred tons of
the wood were in the stores. The lessees assumed by their
lease the outstanding contracts of storage, and the evidence
justifies the inference that Weld & Co. knew of the change
in the occupation, and assented that the plaintiffs should
take the place of Jackson & Underhill in respect to the
contract of January 24, 1871. The referee, therefore, cor-
rectly held that the plaintiffs on the 1st of May, 1872,
became the bailees of the defendant of the wood then remain-
ing in store upon the terms of the original bailment, and
were invested with the same right as was possessed by Jack-
son & Underhill to terminate the contract.

On the 24th of June, 1872, the plaintiffs wrote to Jack-
son & Underhill requiring them to remove the wood, and
notifying them that if it was not removed at the end of
the then current month, and the storage paid, they would

·charge storage thereafter at the rate of two dollars per ton per month on all that remained. This letter was delivered by Jackson & Underhill to Weld & Co. The referee finds that Weld & Co., when the letter was delivered to them, claimed·that they had the right to have the wood remain on storage in the premises until sold by them, at the rate expressed in the receipt of January 24, 1871, and did not assent to the increased rate demanded by the plaintiffs, but declined and refused to pay such increased rate. Weld & Co. did not remove the wood from the storehouse, but they continued to make sales of the wood from time to time after the first of July, as they had done before, and the plaintiffs delivered it on the order of Jackson & Underhill, until the twenty-fifth of October, when they refused to deliver any more until their bill of storage at the rate of two dollars a ton per month from July first should be paid, and soon after they commenced this action to foreclose their lien on the property, claiming that they were entitled to a judgment for $5,553.70, that being the sum due for storage at the rate claimed by them. The referee gave judgment in their favor for $771.91, which was based upon an allowance of storage for the wood at the rate of twelve and a-half cents a ton per month, which he finds was the market rate for the storage of property of this description.

The evidence tends to show that it was the understanding between Weld & Co. and Jackson & Underhill, although not ·expressed in the receipt, that the wood should remain in the Kelsey stores until sold by Weld & Co. The theory upon which the plaintiffs claim to reverse the judgment of the referee is that Weld & Co. having permitted the wood to remain in store after notice to remove it, and after they were informed by the plaintiffs that if not removed storage would be charged at the rate of two dollars a ton per month, an implied contract was created on the part of Weld & Co. to pay storage at that rate after July first. We think that the law does not imply such a contract under the circumstances. It is very manifest that Weld & Co. did not intend to assent to pay storage

at a rate sixteen-fold greater than the market-rate of similar storage elsewhere in Brooklyn, or that which they had agreed to pay under their contract with Jackson & Underhill; nor could the plaintiffs have understood that Weld & Co. intended to concede the right of the plaintiffs to charge that rate. The plaintiffs were not bound to retain the property on storage after July first, and it was the duty of Weld & Co. to remove it at that time, and they were not excused from performing this duty, although they may have believed that they were entitled to have it remain in store on the plaintiffs' premises, under the oral arrangement with Jackson & Underhill. The plaintiffs were, as we have said, not bound to retain the property after the contract of January 24, 1871, was terminated. They would have been justified after that date in removing it, and depositing it in a warehouse at the risk and expense of the owners, subject to any lien they might have for charges prior to the removal. Such a disposition would be consistent with the general purpose of the owners, to have the property kept in store. If a consignee of goods refuses to receive them, the carrier may deposit them in a warehouse, and the plaintiffs might, have relieved themselves of the custody of the wood by the same proceeding. The plaintiffs, after the default of Weld & Co. to comply with their demand to remove the wood, were entitled to charge Weld & Co. the market rate or value of the storage from the time of the default, and were not confined to the rate fixed in the annulled contract. But to imply a contract from the circumstances of this case on the part of Weld & Co. to pay the exorbitant charge for storage made by the plaintiffs is repugnant to equity. Courts in some cases will imply a contract against the intention of a party charged, but this is done only in furtherance of justice.

The case of money obtained by extortion, imposition or deceit, of goods obtained by trespass or fraud, and converted by the wrong-doer into money, are familiar instances of the application of the rule that contracts may be implied.

against the intention of parties when justice requires it. But in this case there was no fraud or imposition, and the circumstances not only do not justify, but repel the inference, that Weld & Co. assented to pay storage at the rate named in the letter of June 24, 1872. The case of *Despard* v. *Walbridge* (15 N. Y., 374) does not aid the plaintiffs. The circumstances of that case, in the opinion of the court, justified the inference that the tenant assented to pay the rent demanded by the landlord. *Schuyler* v. *Smith* (51 N. Y., 309) proceeded upon the ground that the law adjuged the consequences of a holding over by a tenant from year to year after the expiration of his term, and that a disclaimer by a tenant holding over, of an intention to hold for another year, did not relieve him from the responsibility which the law attached to his act.

We think the judgment is right, and should be affirmed. All concur.

Judgment affirmed.