DREYFUSS *v.* FOSTER *et al.*

(*City Court of New York, General Term.* December 20, 1888.)

1. SALE—REFUSAL TO ACCEPT GOODS—DAMAGES—STORAGE.
   In an action for refusal to accept goods sold, plaintiff cannot recover for storage of the goods.
2. SAME—ESTOPPEL—JUDGMENT FOR VALUE OF GOODS.
   Judgment on the pleadings, in such action, for the price of the goods, set forth as items of damage, and payment thereof by defendants, does not preclude defendants from resisting recovery for storage, as to which item of damages the action was continued.
3. SAME—STORAGE—EVIDENCE.
   The recovery by a seller for storage of goods for purchasers must be limited to reasonable warehouse charges, and it is error to permit plaintiff to testify as to the

value of the room occupied by the goods in his building, which is not a warehouse, and the error is not cured by an instruction that plaintiff could recover only what a warehouseman would recover for like services, the jury being further told that they might accept, as to the value of the storage, plaintiff's evidence or the evidence of warehousemen called by defendants.

Appeal from trial term.

Action by Bernard Dreyfuss against Meyer Foster and others, for refusal to accept goods sold. Defendants appeal from judgment entered on verdict in favor of plaintiff.

Argued before McADAM, C. J., and EHRLICH, J.

*Jos. E. Newburger,* (*B. F. Einstein,* of counsel,) for appellants. *Frankenheimer & Rosenblatt,* (*John Frankenheimer,* of counsel,) for respondent.

EHRLICH, J. The complaint contains a single cause of action, which is for damages, direct and consequential, claimed for the breach of a written contract. Three elements of damage are alleged: *First,* refusal to accept or permit a delivery of 564 busts; *second,* refusal to pay one-half the cost of a model; and, *third,* as an item of special damage, $5.64 per day from February 27, 1886, to the date of the trial of the action, as the value of the use of the space in plaintiff's factory, occupied by the 564 busts, in consequence of defendants' wrongful refusal to accept the same. Prior to the trial, an order for judgment on the pleadings had been made, covering the first two items of damages, the amount thereof had been paid, and the action continued as to the third item. I am in favor of a reversal of the judgment appealed from, on the broad ground that the action is one for damages for breach of contract, and not for the agreed price of goods to be manufactured; and that the order for judgment is not an adjudication inconsistent with this construction, nor is defendant estopped or otherwise precluded from resisting, for this reason, the claim for storage. The complaint distinctly alleges that defendants refused to accept or permit a delivery, and claims damages therefor; therefore it should be held that there was no delivery, either in fact or in law, without which the title could not pass. I think also that the learned court below erred in allowing evidence as to the cost or value of cartage, and the value of storage room in plaintiff's factory, and that the latter error was not cured by the charge. The judgment should be reversed, and a new trial granted, costs to abide event.

McADAM, C. J., (*concurring.*) The action, as originally brought, was to recover $564 for that number of busts made for the defendants, and $50 for a model, aggregating $614; and by way of further damages the plaintiff alleges "that in consequence of the defendants' wrongful refusal to accept the said 564 busts, the plaintiff was obliged to keep the same in his warehouse, where the same incumber his premises and occupy space which plaintiff requires for other goods; and plaintiff claims as special damage, or by way of storage, $5.64 per day from February 27, 1886, to the date of trial." The action was severed as to the first two causes of action, judgment being awarded in favor of the plaintiff in respect thereto, and the action was allowed to be continued, and went to trial as to the storage only, and the question, which is a novel one, is narrowed down to the right of a vendor to recover storage.

When a vendee or person refuses to accept the property bargained for, the vendor or manufacturer has the choice of one of three remedies: (1) To treat the property as belonging to the vendee, and to sue for the contract price, (*Hunter* v. *Wetsell,* 84 N. Y. 549;) or (2) to sell the property on notice, at the market price, and sue the vendee for the difference between the sum realized and the contract price, (*Crooks* v. *Moore,* 1 Sandf. 297; *Pollen* v. *Le Roy,* 30 N. Y. 549;) or (3) regard the contract as forfeited, and retain the property as his own, and sue the vendee for damages for the non-performance of the contract, in which case the damages are limited to the difference between the contract price and the market value, (*Mason* v. *Decker,* 72 N. Y. 595, 599;

*Cahen* v. *Platt*, 69 N. Y. 348; *Bigelow* v. *Legg*, 102 N. Y. 652, 6 N. E. Rep. 107.) The action, although seemingly in form for damages for the breach, is really for the contract price, and the claim for storage is made the subject of special damages. The election as to the form of the remedy, when once made, is determined forever, (*Moller* v. *Tuska*, 87 N. Y. 166, 169;) and the defendants, on paying the judgment for the price, became entitled to the subject of the sale, (by analogy, Freem. Judgm. § 237.) The action was continued upon the mistaken theory that because the vendees refused to receive the goods, the plaintiff, by the service of notice to the effect that, unless the vendees accepted the goods on or before February 27, 1886, he would thereafter charge them storage thereon at a specified rate, followed by the failure of the vendees to pay for and take the same, created an obligation on their part to pay the charges threatened to be made. No such right existed. The plaintiff retained the property for his own benefit, to secure his lien for the unpaid purchase money, and not for any purpose advantageous to the defendants, who declined to have anything further to do with the property. A promise to pay cannot be implied against the defendants when by their acts and declarations they had expressly declined to have anything further to do with the subject-matter to which the supposed promise was to be attached. *Hazeltine* v. *Weld*, 73 N. Y. 156. As in a case in England, it was the unanimous judgment of the queen's bench, the exchequer chamber, and the house of lords, that a shipwright, who kept a ship in his dock after repairing her, in order to preserve his lien, had no claim at all for dock charges against the owner of the ship for the time that elapsed between the completion of the repairs and the delivery of the ship, notwithstanding the owner's default in payment; the real reason being that such detention and charge therefor is simply a keeping of the chattel for his own benefit, and not for the other party. *Shipping Co.* v. *Somes*, 1 El., B. & E. 353. A notice was given in the case cited, as in this, and yet the court held that no contract to pay could be implied from that circumstance. The principle laid down in that case is pertinently applicable to the one under consideration. The plaintiff did not intend to abandon the property to the defendants, nor terminate his right to its possession. He intended to retain it until his demand for the consideration money was paid, so that the rule applicable to a gratuitous bailee (having no interest in the goods) who desires to terminate the bailment has no application. *Dale* v. *Brinckerhoff*, 7 Daly, 45. If the plaintiff had not sued for the contract price, he might, upon the refusal of the vendees to accept and pay for the property, have stored the goods at their expense, preparatory to a resale of them on the vendees' account, and recovered the warehouse rent during such time as would have been reasonably required to sell the goods to advantage, but for no longer time. See latter portion of section 436, Story, Sales, (4th Ed.;) *Chesterman* v. *Lamb*, 2 Adol. & E. 129, 4 Nev. & M. 195; *McKenzie* v. *Hancock*, Ryan & M. 436. The authorities which incidentally speak of allowing the vendor storage charges and insurance premium will, upon examination, be found to refer only to cases in which the right to resell is contemplated, and exercised within a reasonable time, (see *Greaves* v. *Ashlin*, 3 Camp. 426; *McEachron* v. *Randles*, 34 Barb. 305; *Lewis* v. *Greider*, 51 N. Y. 237;) and in exercising it the vendors must have the interest of both parties in view, that the act may benefit both, (*Lewis* v. *Greider*, *supra*.) The fact that all concerned are benefited by moderate expenses incurred in keeping down damages is the foundation of the right to reimbursement. Field, Dam. § 21. There was no attempt by the plaintiff to resell the property or to keep the damages down, and there is no basis for expenses incurred in such an effort. A common carrier, whose vessels or cars are constantly going to and fro, and who has no interest in the goods, except to secure his lien for the carriage of them, may sometimes terminate his duty by storing the goods, (*Clendaniel* v. *Tuckerman*, 17 Barb. 184,) subject to his lien, (*Compton* v. *Shaw*, 1 Hun, 441,) to

prevent unnecessary detention of the vessel or cars, or damages therefor in the nature of demurrage, (*Crommelin* v. *Railroad Co.*, *43 N. Y. 90;*) the carrier, unlike a vendor, having no common-law power of sale, (Overt. Liens, § 143,) and the effect of the storage being to protect the general, as well as the special, property therein, the nature of the cases admitting of both; but such privileges can hardly be extended to a vendor having a more effective remedy at hand, and who holds the property because it has not been paid for. The property may by a fiction of the law vest in the vendee for certain purposes, such as authorizing an action for the price, yet it is equally clear that the vendee cannot get possession of it until he pays the agreed value thereof. Another instance of the application of the rule will be found in *Robbins* v. *Codman,* 4 E. D Smith, 315, where the freight and charges on an entire voyage were due, and approached the value of the goods. Upon the arrival of the vessel at its distant port of destination, neither the consignees nor other persons received the cargo, and the court held that the master under the exigencies of the case was bound to sell to pay the freight at the expiration of the lay-days, or within a reasonable time thereafter, and that the charterer was not liable for demurrage after such reasonable time. It would seem, therefore, that the instances in which storage charges have been sanctioned were all of them in consonance with the cases before referred to, and within the elementary rule that a plaintiff in protecting himself must do no unnecessary act to the injury of the defendant; in other words, the plaintiff must not fail to exercise every opportunity of lessening the damages, and making them as light as possible.    *Dillon* v. *Anderson,* 43 N. Y. 237; *Hamilton* v. *McPherson,* 28 N. Y. 72; *Heckscher* v. *McCrea,* 24 Wend. 304.    The contract price of the goods was presumptively their value, and it is difficult to imagine how the damages were to be lessened by placing in store goods on which their full value was owing, when the very act of storing them was adding a new charge to that already existing, and one which in the nature of things has to continue to grow day by day to the detriment of some one. The plaintiff in this manner was not only imperiling his security, but inflicting loss upon himself or the defendants.    By the inactivity of the plaintiff and defendants, the bud of error blossomed into storage charges, which (according to the plaintiff's figures) aggregated at the time of trial $3,900.    This amount must have shocked the sensibility of the plaintiff, for he voluntarily reduced it to $1,875, and even this sum is nearly double the contract price of the entire goods ordered, part of which had been previously paid for.    Where the liability is to end (if it has not already ended) time alone can tell.    Practically illustrated, the proposition, as applied to the facts of this case, is substantially this:    The vendor writes to the vendee.    We have a controversy about the quality of certain goods.    One or the other is necessarily wrong in his contention.    Now, I will store the goods away pending the litigation, so that when the dispute is decided the loser is to pay $3,900 for storage.    There is certainly no authority for holding a vendee who never consented to such an arrangement liable to its terms, nor is there any warrant for charging storage to him when he never authorized the expenditure, and when no pressing exigency made the charge necessary.    Indeed, so careful is the law to protect a person against unnecessary damage that if the storage is left unpaid, the property may be sold by the store-keeper for the payment of his charges when they approach near the value of the goods, for this circumstance justifies a sale of them. *Dale* v. *Brinckerhoff,* 7 Daly, 45.    Considering the fact that the plaintiff's lien for the unpaid purchase money was equal to the value of the goods, the storing of the goods subject to this lien would, under this principle, have authorized a sale by the warehouseman at once; a feature which demonstrates that the plaintiff's prudent course was to have sold the property in the first instance, on notice to the defendants, and charged them with the difference between the contract price and the net proceeds of sale, a course which would

have protected the plaintiff, and not put the defendants to needless expense.

The action is misconceived, and no recovery should have been allowed under the pleadings or proofs. The trial judge ought to have dismissed the complaint when the motion was made therefor by the defendants' counsel, and he erred in not doing so. It is not to be inferred from what we have said that a vendor must, where the vendee fails to accept, sell the goods, for, while he may, he is not bound to sell the property, (*Hunter* v. *Westsell*, 84 N. Y. 549,) except in cases where storage charges are contemplated. The theory of the damages adopted was erroneous for two reasons: *First.* The party in default is only liable for such damages as naturally arise from the breach, or which may reasonably be supposed to have been within the contemplation of the parties when the contract was made as the probable result of its breach, but not for accidental, remote, or consequential causes. The contract itself furnishes the *data* from which the damages are estimated; and those naturally arising from the breach of the contract made by the parties litigant hereto were (1) the contract price, (2) the difference between the sum realized on a resale and the contract price, (3) the difference between the contract price and the market value, depending of course upon the nature of the remedy pursued. The only other damages supposed to have been within the contemplation of the parties was the interest upon the sum withheld, for this is the uniform rule of damages allowed in the absence of any express condition when payment is withheld after it has become the duty of the debtor to discharge the debt. Sedg. Dam. (6th Ed.) 473, note. These damages are supposed to fully compensate every loss a vendor or manufacturer sustains by reason of the failure of the purchaser to complete his contract, and they effectually exclude the idea of such consequential damages as storage. It would be far-fetched to hold that a party ordering goods contemplated storage expenses, or that such charges naturally follow a purchase. The object of a purchase is to obtain an article to supply a use either of the purchaser or of some customer of his. The purpose is not to give a warehouseman employment, or enable him to make a bill. It is clear, therefore, that the minds of the parties never met upon the subject of storage. *Second.* But assuming for the moment that such far reaching damages were recoverable, they were not sufficiently restricted in the period of their duration. The plaintiff brought suit seven days after the defendants' default in not accepting the goods according to the notice, and, if entitled to recover at all, the recovery should have been limited to the lawful warehouse charges due when the suit was commenced. This is but a trifling sum. The damages were not of a continuing character, as in *Everson* v. *Powers*, 89 N. Y. 527, but were of a temporary nature, to cease when a resale of the property was made by the plaintiff on the defendants' account; and that should have been had within a reasonable time. But the plaintiff never attempted to resell, in fact, disabled himself from reselling by suing for the contract price, (*Westfall* v. *Peacock*, 63 Barb. 209,) so that the legal right to store the goods (even for a reasonable or any time) was not established; and thus we are driven back to the root of the contention, which furnishes no foundation for any damages whatever. The defendant neither expressly nor impliedly assented to the storage of the goods, and the plaintiff kept them on his premises by his own act and neglect, for which the law allows no recompense; *volenti non fit injuria.* The evidence as to value is equally as objectionable, for, even if entitled to any recovery, the plaintiff was limited to the ordinary warehouse charges. *Hazeltine* v. *Weld*, 73 N. Y. 156. The trial judge permitted the plaintiff to testify to the value of the space on his premises (not a warehouse) occupied by the goods. He corrected himself, by telling the jury that "the plaintiff was not entitled to recover anything more than that which a warehouseman would recover for like services," and then went back to the first error, by charging the jury that they might accept either the evidence of the defendant's witnesses (warehouse experts),

or of the plaintiff on the subject of the value of the storage.   This was error, for the plaintiff's evidence was based on the erroneous theory that the value of the space occupied on his premises (not a warehouse) was a proper measure of damages, when the recovery (if any had been permissible) ought to have been restricted to the customary charges for such storage in a regular warehouse, the rates of which are uniform and moderate, and which tend to establish with precision the market rates.   This direction presumably misled the jury, (*Greene* v. *White*, 37 N. Y. 405,) who at the conclusion of the trial awarded the plaintiff a verdict for $400 damages.   There is nothing in the case to sustain this recovery, or (as before remarked) any recovery whatever. For these reasons I concur that the judgment must be reversed, and a new trial ordered, with costs to abide the event.