Henry Epstein, J.
Plaintiff corporation sues to recover from defendant charges for receiving, storing and guarding drums of soybean oil for the period from April 1, 1958 to May 7 and May 12, 1958. The charge made is 28 cents per ton per day that the material was on the piers.
Plaintiff corporation is the lessee of Piers 15 and 16, East River, New York City. The facts in this case, while extensive, are not essentially in dispute. Beginning in January, 1958 defendant requested wharf facilities for substantial tonnage of *605 oil drums with soybean oil destined for shipment to Spain. Some 2,500 tons were for January shipment and others for shipment in vessels in February and March, 1958. In all, plaintiff received from four shippers 5,696 long tons of soybean oil contained in some 27,157 drums, averaging about 5 drums to a ton of the oil. All of Pier 15, one half of Pier 16, street storage space at Pier 15 and use of part of Pier 14 (by contract) were required for the intended shipments.
Plaintiff’s requests for shipping instructions cover an almost daily period from January 13, 1958 to March 18, 1958 with a warning of charges if no instructions were received. There was no answer from defendant except a prayer for time to receive word from Spain. From March 24 to April 7, 1958, defendant continued to respond with the answer that it still awaited “word from Spain”. The S. S. Guadalupe sailed in January; the S. S. Covadonga sailed in February. Clear warning was given to shippers and to defendant that charges at the rate indicated would be made for failure so to give instructions and for such storage from April 1, 1958 to dates of shipment.
On March 25, 1958 the written notice of such charges was given. Defendant, while questioning the charges, did undertake, expressly in writing, to pay for such charges, asking that they be not assessed “ to the holder of the dock receipt, but against us ” (letter of March 26, 1958). This undertaking was reaffirmed in defendant’s letter of April 28, 1958, while questioning ‘ ‘ the correctness of such charges ’ ’. The shipments were made when released by defendant; 4,733 tons to Spain on May 7 and 936 tons to Spain on May 12, 1958. The release of the oil for shipment was on the basis of defendant’s undertaking.
The explanation of defendant’s proroguing the shipping dates is not too far to seek. From information in Spain defendant knew of the need for soybean oil for popular consumption at reasonable prices and the proposed loan from the United States sought by the Spanish government. Said loan was to be the means of financing purchases in the United States, including soybean oil in substantial quantities. Defendant made such purchases; had the oil in drums, ready for shipment, delivered to plaintiff’s piers, from which shipments were regularly made to Spain and Spanish speaking countries, but defendant could not be paid in dollars here unless and until the financing arrangements were completed by the Spanish government. On the premise that the oil was for prompt shipment to Spain, defendant induced plaintiff to accept the oil on its piers. Defendant knew it could not ship before it was assuréd of payment in dollars here in the United States. This *606 did not come to pass until on February 11, 1958 the public announcement was made of the authority for such purchases, and limited to sales contracted for after February 18, 1958.
The amount available to Spain was $41,800,000. Thus, despite its original proposals to plaintiff, defendant had not sold its oil and could not contract for its sale until after February 18, 1958. What defendant did was to tie up plaintiff’s facilities at plaintiff’s expense until shipments were finally made May 7 and 12, 1958. Defendant guaranteed payment of any charges properly made for such storage on plaintiff’s piers.
There are a number of cases which sustain plaintiff’s recovery— there is no issue here as to the reasonableness of the charge of 28 cents per ton per day, if any charge is allowable (Hazeltine v. Weld, 73 N. Y. 156; Incorporated Soc. St. Maria v. Lorusso, 5 Misc 2d 551-553; Harrison v. Berkowitz, 109 N. Y. S. 2d 722-723, 724). Nor is the argument of defendant sound that plaintiff’s charges are unenforcible because of regulations of the City’s Department of Marine and Aviation, even if the latter were adverse to plaintiff. As between plaintiff and defendant there was a clear and enforcible agreement for valuable consideration. (See Rosasco Creameries v. Cohen, 276 N. Y. 274, 280; Moglen v. Gasper, 4 Misc 2d 368, 369; Brew, Woltman & Co. v. Anthony, 94 F. Supp. 955, 956-957.)
We search in vain for express or implied provisions in plaintiff’s permits prohibiting the charges sued for here. Nor do we find in the Rules and Regulations of the Department of Marine and Aviation any such prohibition. Piers 15 and 16 are not operated as 1 ‘ public wharves ’ ’. They are leased pursuant to section 707 of the City Charter. The use of the piers for private use is expressed in the very rigid restrictions of the permit to plaintiff as ‘ ‘ agent of the following: ’ ’ then listing the Spanish shipping companies ‘ ‘ and for no other purpose except with the prior written approval of the Commissioner in each instance”. “Public Wharves ” are otherwise provided tor in section 708 of the City Charter.
The use bears upon the question whether a pier is public or “ private ”. On the question of charges permitted, see The M. L. C. No. 10 (10 F. 2d 699, 702-705, cert, denied 271 U. S. 675). Nor can defendant escape its obligation through interposing that plaintiff is not the true party in interest.
Pan Atlantic Company is the terminal operator for plaintiff Garcia & Diaz, Inc., as agents for plaintiff, in whom the exclusive possession of these piers is vested. The authority to make the charges and the franchise were with plaintiff and Garcia and Diaz paid the city for the pier leases.
*607 Plaintiff also paid the charges for the use of the street margin next to the pier for storing defendant’s oil. Beimbursement from Pan Atlantic Services Corporation does not affect the right of Barcia and Diaz in the instant case (Watts v. Phillip v. Jones Corp., 211 App. Div. 523, affd. 242 N. Y. 557; Civ. Prac. Act, § 210; Wellman v. Holzer, 56 N. Y. S. 2d 299, 302).
Defendant speculated on the time schedule for the United States’ loan to Spain for purchases here, including soybean oil. Defendant’s miscalculation on the time element, while accurately anticipating the dollars available in the United States for its sale to Spain, should not be permitted to penalize plaintiff for the storage of defendant’s oil on plaintiff’s piers. Defendant could have removed its 27,000 odd drums of oil and stored them elsewhere before April 1, 1958.
It chose to assume the full obligation for the charges, if properly made. There is no dispute as to the accuracy of the charges made at the rate expressly stated to defendant. That sum is $53,616.36. Interest should be paid on said sum from May 12, 1958 when final shipment was made.
Judgment to be entered, with interest as indicated, together with costs.