JOHN G. FUCHS, Respondent, v. JOHN A. MORRIS, Appellant.

*Irresponsive answer taken on a commission — when stricken out — general evidence as to the excellence of an article, overcome by proof of specific defects.*

Although testimony, otherwise competent, taken upon commission, is not to be rejected because not responsive to the interrogatory, any more than it would be if given upon an oral examination upon the trial, because not responsive to the question, yet when irrelevant and inadmissible evidence is given by an irresponsive answer to an interrogatory upon commission, it is error to refuse to strike it out on a motion stated to be made on the ground that the answer is irresponsive.

The evidence that an instrument was well manufactured of the best materials and perfect, is entitled to very little weight as against positive and uncontradicted evidence that it was found defective immediately after it was put in place, and continued to be defective in operation until it was reconstructed.

APPEAL by the defendant, John A. Morris, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of January, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order made on the 19th day of January, 1894, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes.

*Alfred B. Cruikshank*, for the appellant.

*Edward G. Black*, for the respondent.

FOLLETT, J.:

The defendant did not move for a nonsuit or that a verdict be directed in his favor, and the plaintiff did not ask that a verdict be directed in his favor as to any of the counterclaims. The questions contained in the record are presented by the defendant's exceptions taken to the rulings upon the admissibility of evidence, to the refusals to charge as requested and to the charge as delivered, and by the appeal from the order.

The action was brought to recover the last installment of the purchase price of an orchestrion. The defendant alleged as a defense that the instrument was defective in design and construction, and that the plaintiff failed to perform his contract in respect to it. He alleged by way of counterclaim that he had sustained $6,000 damages by reason of the defective construction of the instrument. Other counterclaims were set up in the answer, which need not be here specially referred to.

April 25, 1890, the litigants entered into a written contract by which the plaintiff agreed to " well and sufficiently make, finish, complete and deliver and set up the musical instrument described in the specifications hereto annexed, commonly known as an orchestrion, agreeably to the said specifications signed by the said parties and hereunto annexed, within ten months from the date hereof, in

a good, workmanlike and substantial manner, to the satisfaction of Thomas R. Jackson, to be testified by a writing or certificate under the hand of said Jackson."

The contract contained the following covenant:

"And in consideration of those presents said Fuchs hereby represents, guarantees and warrants that said orchestrion will be a first-class instrument and will keep in perfect running and working order, and in all respects be satisfactory for five years after its erection, and will during all such time utter and furnish good and satisfactory tones and music, and agrees to tune the same as often as required and to keep it in order and to do all repairs thereto for such period. He also represents that such instrument does not require expert or extraordinary skill or care in its management."

The orchestrion was built for use in the New York Jockey Club House at Westchester. The defendant agreed to pay for it $14,300, in four equal installments of $3,575; the first on the execution of the contract, the second when the instrument was received at the custom house in the city of New York, the third when it was set up in the club house, and the fourth "six months after said instrument has been set up in the Club House and is in operation there, provided said instrument is as represented herein in every respect." The contract also provided that the covenants and agreements were to be strictly performed and kept by the plaintiff, and that "everything will be made in a good, workmanlike and substantial manner, to the best satisfaction."

The orchestrion was manufactured by Imhoff & Mukle, at Vohrenbach, Germany. The deposition of a member of this firm was taken in behalf of the plaintiff and by him read in evidence. The following question put to the plaintiff and answer were contained in the deposition: "Q. State whether such cracking or splitting is due to faulty construction, or poor or bad material, in such cylinders, or the location, surroundings or otherwise; state fully regarding the matter? A. The firm Imhoff & Mukle have manufactured, sold and have in operation over two thousand orchestrions; they are furnishers to her Majesty Queen Victoria; that they have many such instruments in Great Britain, France and Germany; that the orchestrion furnished the Jockey Club was the very best and most complete that the firm of Imhoff & Mukle could make; that special

care and labor were bestowed upon it, as it was the first of the largest sized orchestrions that was sent to America; that it was the aim of said firm to give perfect satisfaction, as they did desire to extend their trade into the United States. [Defendant's counsel objects to the answer as not responsive and moves it to be stricken out. Overruled, and defendant excepted.]"

The plaintiff seeks to justify this ruling upon the authority of *Fassin* v. *Hubbard* (55 N. Y. 465), in which it was held that "testimony, otherwise competent, taken upon commission, is not to be rejected because not responsive to the interrogatory, any more than that given upon an oral examination upon trial because not responsive to the question." The answer above quoted is not otherwise competent, but is utterly irrelevant. But we find no case holding that, when irrelevant and inadmissible evidence is given by an irresponsive answer, it is not error to refuse to strike it out on a motion based on the ground that the answer is irresponsive. (*Lansing* v. *Coley*, 13 Abb. Pr. 272; *Terry* v. *McNiel*, 58 Barb. 241; *Railway Passengers' Assurance Co.* v. *Warner*, 1 T. & C. Add. 21.) There was no way in which this evidence could have been made competent.

Whether the firm had furnished her Majesty Queen Victoria with an orchestrion, and their aims and objects in manufacturing the one in question, were facts utterly immaterial to the issue involved in the trial of this case. The answer in its whole scope is utterly irrelevant, and of a nature likely to influence the jury. It might well have been objected to on the ground that it was irrelevant to the issue, but it was not, and we think that this court, in the exercise of its right to grant a new trial, when it believes that injustice may have been done, should not disregard this exception.

Upon the issue whether there was a breach of the warranty of the quality of the instrument and of the covenant that it should be kept in perfect running and working order, and in all respects satisfactory for five years, we are of the opinion that the verdict was contrary to the weight of evidence. The plaintiff concedes that many defects were found in the instrument immediately after it was put in operation, and that other defects were being continually developed from time to time during the following year, but he insists that these defects arose from two causes: (1) The excessive heat communicated by two steam pipes passing in the rear near to the instru-

ment; and (2) careless handling of the instrument by the defendant's employees. The instrument was set up in April and May, 1891, and was played for the first time on the twenty-fifth of May. Early in June it was found to be defective in operation, and from that time until autumn it was frequently repaired by the plaintiff, and early in the autumn the cylinders of the instrument were found cracked and warped.

The evidence on the part of the defendant is that the steam was shut off from the pipes passing near the instrument, and that no steam was allowed to pass through them after the instrument was put up. There is no evidence on the part of the plaintiff that these pipes, which were designed to communicate steam for heating the upper floors, were used for such purpose during the summer of 1891, and it seems quite impossible that these checks, cracks and warpings could have been developed during the summer by the excessive heat caused by these pipes. The plaintiff does not assert that these checks, cracks and warpings were caused by the improper handling of the instrument by the defendant's employees, but that such handling did bend and injure the pins on the cylinders. It is true that one of the manufacturers of the instrument testified that it was well made and perfect in every respect. In *Boughton* v. *Smith* (142 N. Y. 674) it was said: " The plaintiffs gave evidence that the floors were of the best materials and workmanship. This does not meet the specific and uncontradicted evidence as to shrinkage, and the acts of the plaintiffs in relaying and repairing them show that the general statements (by defendant that he was satisfied with the floor) were not intended to cover this defect." So in this case, the evidence that the instrument was well manufactured, of the best materials and perfect, is entitled to very little weight as against the positive and uncontradicted evidence that it was found defective immediately after it was put in place, and continued to be defective in operation until it was rebuilt.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.