(19 Misc. Rep. 138.)

## HAFNER v. McCAFFREY.

(Supreme Court, Appellate Term, First Department.   January 25, 1897.)

SALES—BREACH OF WARRANTY.

    There is a breach of warranty that a pony is gentle where he proves vicious immediately after the sale, and there is no evidence that his disposition has changed, or that his behavior is due to the buyer's wrongful act, though the pony had always behaved gently up to the time of the sale.

Appeal from Eighth district court.

Action by Lawrence Hafner against James F. McCaffrey for breach of warranty. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Robert A. B. Dayton, for appellant.
William J. Boyhan, for respondent.

DALY, P. J.   The action was to recover $150 damages for breach of warranty upon the sale of a pony. The warranty is as follows:

"This is to certify that I guarantee and warrant the white pony to be gentle and kind and sound, and safe for children to ride or drive. If returned to me in sound condition, I will give within $35 of the purchase price, $110, including wagon and harness and pony.   James F. McCaffrey,
"Per Benj. McCaffrey."

The sale of the pony was on June 26, 1896, and he was taken on the next day, or the day following, to Patchogue, Long Island. He was balky and sulky when taken from the car, and the week afterwards he ran away with the plaintiff. A few days afterwards he ran away with the plaintiff's wife and son, while the wife was driving; and on July 14th, when the plaintiff's son was driving with his sister, the pony ran away, and both children were thrown out. The evidence shows that there was nothing to frighten him on any of these occasions. He was then intrusted to a livery stable keeper, who attempted to drive him, but he balked and bolted. This testimony was given by the plaintiff and his wife and son, and by the livery stable keeper. On the part of the defendant, it was shown that the pony had been driven a week before the purchase under the elevated railroad tracks; that he stood in the street without being fastened; that he would not kick when his tail was pulled; that the defendant had had him three weeks, and drove him with his children, and let his little boys drive him. The persons who sold the pony to the defendant were called as witnesses. One of them had had the pony four months, drove him over the steam railroad and under the elevated railroad tracks, had his children in a wagon behind him, and never heard of his running away. The other testified that he was a trick pony, and would "go down on his knees and say his prayers, and that children would get on his back and ride him." Another witness said that his boy had driven him alongside the cable cars. An expert witness called by the court gave as his opinion, upon all of the testimony, that the pony was gentle. Notwithstanding the excellent, even exemplary, behavior of the pony while in possession of the defendant and the other dealers, his prior owners, it appears that immediately after the plaintiff bought him he acted in a way to make it manifestly unsafe for children to ride or drive him, according to the terms of the warranty. The defendant alleges that such subsequent behavior, in view of the testimony offered by him, fails to show that he was not all that was warranted at the time of the sale, and upon this view of the case the justice undoubtedly acted in dismissing the complaint. But as was said by the court in Hall v. Colyer (Sup.) 8 N. Y. Supp. 801:

"When the actions of the horse showing a bad, ungovernable temper are shown so soon after the sale, and continue, and are without reason, the jury were entitled to take the evidence of subsequent conduct as evidence of previous unkindness."

Such evidence must outweigh all testimony as to good behavior of the pony while in the hands of the various dealers by whom he was owned before the sale. They doubtless could and did manage him so as to keep him in subjection, but as soon as he was in the hands of others he became uncontrollable. The observations in Fuchs v. Morris, 81 Hun, 536, 30 N. Y. Supp. 1017, which was an action for the purchase price of an orchestrion, with a counterclaim for defective construction, and in which a new trial was ordered by the general term of the First department, apply to this case:

"The evidence that the instrument was well manufactured, of the best materials, and perfect, is entitled to very little weight, as against the positive and

uncontradicted evidence that it was found defective immediately after it was put in place, and continued to be defective in operation until it was rebuilt."

The warranty in this case was that the pony was "gentle and kind and sound, and safe for children to ride or drive." He proved to be quite the opposite, upon trial; and without some evidence that a change of disposition had occurred immediately after the sale, or that his behavior was due to some wrongful act of the plaintiff or his family, the conclusion is irresistible that he was not as represented at the time of sale.

Judgment reversed, new trial ordered, costs to appellant to abide the event. All concur.