SETH H. TERRY *et al.* administrators &c. *vs.* JOHN McNIEL.

58  241
81h 539
58b 241
21ap 60

Where the evidence, on a trial before a referee, was greatly conflicting, and its weight depended almost entirely upon extrinsic circumstances, and the degree of credit to which witnesses were entitled, of which the referee, who saw their deportment on the stand, and who lived in the vicinage, was better qualified to judge than any reviewing court could be, who saw the witnesses only upon paper; *Held* that upon well established authority the case could not be reviewed, on appeal, upon the facts.

An order of reference, made at a special term, is not brought up by an appeal to the general term from the *judgment* entered in the action. Such order, if erroneous, should be corrected by a direct appeal from it to the general term.

The examination of witnesses upon commission being under the authority of a statute, must be in strict obedience to the statute rule. It is a departure from the common law practice, and is susceptible of great abuse, unless a rigid rule is observed, in practice. *Per* POTTER, J.

The testimony of a witness taken upon a commission will be stricken out on the trial if it is evasive, irresponsive or untruthful, or the witness has not fully and fairly answered the cross-interrogatories.

Where the object of questions put to a witness, on cross-examination, is to test his memory, the allowance thereof is a matter within the discretion of the referee.

Where the defendant had previously been called as a witness in his own behalf, and had testified to an examination of certain account books of the plaintiff's intestate and the entries therein, and had impeached such entries as to an omission of credits to himself; *Held* that it was competent to impair this testimony in all possible legal ways, and to impeach the memory of the witness as to such books, and the entries therein, by their production; and to do this by the testimony of the plaintiff, with whom the defendant had examined them.

*Held, also,* that the books, so far as they gave credits to the defendant, were admissible, because the entries were against the interest of the plaintiff; that they were therefore competent evidence.

Prices current, published for public information, and for general purposes, in a public newspaper, are admissible in evidence for the purpose of showing what was the price of grain, in the market, at the time of publication.

In an action by the administrators of the assignee of a bond and mortgage, against the mortgagor, to recover the balance due thereon, a mortgage book, owned by such assignee, containing entries of payments, and of interest accrued, upon the bond and mortgage in question—after proof that such book, and the entries therein, had been shown to and examined by the defendant, who made no objection thereto, claiming only that there was one receipt not credited therein—is admissible in evidence, not technically as a a book, but as containing a statement of debt and credit between the parties, admitted to be correct, to a certain extent, by the defendant.

Terry *v.* McNiel.

THIS action was brought by the plaintiffs as administrators of William Stevenson, deceased, against the defendant, upon book account, upon several promissory notes, and for balance due on a bond secured by a mortgage. The action was tried by a sole referee, who reported in favor of the plaintiffs $1158.20 as due upon the bond and mortgage, and found nothing due upon the account or the notes, but that they had all been paid and satisfied. The appeal is brought to reverse the finding of the referee. The case had been in the courts, and previously tried at one or more circuits, and appeals to the general term; judgments reversed; orders of reference, &c.; and there had been various other orders, proceedings, and stipulations in the case, reference to which, with other facts, sufficiently appear in the opinion.

*J. S. Coon,* for the appellant.

*J. Gibson,* for the respondents.

*By the Court,* POTTER, J. The only review that can be taken of the trial, in this case, must be as to errors committed by the referee on the trial. No error of fact is claimed, upon either side, as to the report upon the account or notes sued upon; and there can be no real complaint upon the merits, upon any fact regarding payments upon the bond, except as to one payment of the amount of $315, on the 15th day of February, 1841. After a thorough review of the evidence in regard to this item, I do not feel justified in reversing, and I think a court of review could not, by any known rule, reverse the judgment upon this finding, for the reason that the evidence is greatly conflicting, and its weight depends almost entirely upon extrinsic circumstances, and the degree of credit to which the witnesses who testified are entitled, of which a referee, who saw their deportment, on the stand, and who lived in the

Terry *v.* McNiel.

vicinage, is more likely to judge correctly than any review-ing court who see the witnesses only upon paper. Upon well established authority, then, the case cannot be reviewed upon the facts.

The first point of objection by the defendant is to the order of reference made by the special term, on the ground claimed, that the action had been adjudged by the general term to be not a referable action; and that an appeal from a judgment brings up every proceeding in the progress of the action, and therefore that order was here for review. This point is not well taken. This order, if erroneous, should have been corrected by a direct appeal from it, to the general term.

The second objection to the ruling of the referee on the trial was, that the plaintiff moved before the referee to strike out the testimony of a witness, who had been exam-ined upon a commission, to a portion of the direct inter-rogatories, on the ground that he had not fully and fairly answered the eighteenth cross-interrogatory thereto, and the referee granted the motion. The witness, John S. Steward, had been examined by the defendant on inter-rogatories in relation to other issues between the parties than that of the balance due on the bond and mortgage, and was regarded as an unfriendly witness to the plaintiffs; and in answer to the fourteenth cross-interrogatory, had answered, that he was unfriendly to the administrator, (Terry, the plaintiff;) and in the twelfth, that he had sued the estate, claiming several thousand dollars against them, and had been beaten, after a severely contested law suit, in which the estate had recovered against him nearly $2000. The eighteenth cross-interrogatory of the plain-tiff to this witness was in the following words: "Has the defendant, or any one for him, or in his behalf or other-wise, drawn, prepared, suggested or advised you by lan-guage, letter or otherwise, what interrogatory, direct or cross, would, could or might, be put to you on the execu-

tion of this or any commission in this action, or in, or on taking your evidence therein, or in or on giving or aiding your answer thereto, or any or either of them, or any part thereof; or given or suggested to you any information, or other matter or thing, in regard thereto, or the nature thereof, or what question or questions would be put? *A.* I have advised the defendant's counsel what I would testify to; but no interrogatory or question were drawn or prepared that I know of, until this commission was issued; I had expected, up to about the time the commission was issued, to give my testimony in open court; I can give no further answer to this question than has already been given." Whether intended or not, it cannot but be seen that a portion of this answer is irresponsive; nearly the whole evasive; and the conclusion must be untruthful, when he replies that he can give no other answer than had already been given. He could surely answer, yes, or no, to portions of this cross-interrogatory. This method of examining witnesses being a statute authority, must be in strict obedience to the statute rule; it is also a departure from the common law practice, and is susceptible of great abuse, unless a rigid rule is observed in practice; a willing, or a stubborn witness, protected from the personal scrutiny of a court and jury, can cause great injustice by the exercise of his prejudices or his will; and it is the duty of courts to watch such proceedings with jealous care. The party who obtains such testimony takes it at his peril, if it carries upon its face a suspicion of injustice; and the party obtaining it is, upon its return, supposed to know its defects, and can apply to the court to have them corrected. If he carries his defective commission into court, he subjects it to judicial scrutiny. I think, in this case, it was rightly rejected by the referee. (*Smith* v. *Griffith*, 3 *Hill*, 339. *Lansing* v. *Coley*, 13 *Abb.* 272. *Valton* v. *National Fund Life Assurance Co.*, 20 *N. Y.* 32.) This is distinguished from the cases in practice where the execution of the commission

Terry *v.* McNiel.

is defective, when a party should move to suppress the commission. (2 *Abb.* 271. 4 *id.* 413. 19 *Barb.* 391.) There is still another reason why this ruling is not error in this case. The whole deposition has no bearing upon the only questions of fact litigated—that of the amount due upon the mortgage.

The next objection raised by the defendant, is to questions allowed by the referee to be put to the witness James Hall, a person in interest in the action, as to what he claimed, and allowed his counsel to claim, on a previous trial in this action, as to certain payments made upon the claims in the case. This objection is not well taken. The case shows that this objection was raised on the defendant's own cross-examination of the witness, though the case also shows that the defendant objected to the questions. Without any explanation, there is confusion about it that the court cannot solve. The witness was sworn on the part of the plaintiff; then he was cross-examined; then re-examined by the plaintiff; then again the cross-examination was resumed by the defendant, during which these questions now objected to were put; then again re-examined by the plaintiff; then again re-cross-examined by the defendant. If there is a mistake in the *case,* and this should be the defendant's witness, (which we cannot know,) then these questions objected to would be put upon a cross-examination, which would be tolerated as a matter of discretion in the referee, as the questions put seem to be to test the memory of the witness. We cannot hold this to be error, be it either way. This applies also to the objection taken to the question at folio 263, of the same character.

The objection to the introduction of the account books of William Stevenson, deceased, I think, under the circumstances, was not error. The defendant had previously been called as a witness in his own behalf, and had testified to an examination of the contents of these books, and

Terry *v.* McNiel.

the entries therein relating not only to the accounts and dealings other than the bond, but had in his testimony impeached the entries therein as to an omission of credits to himself. It surely was competent to impair this testimony in all possible legal ways, and to impeach the memory of this witness as to these books and the entries therein, by their production; and to do this by the testimony of the plaintiff, with whom the defendant had examined them. The books, so far as they gave credits to the defendant, are admissible, because such entries are against the interest of the plaintiff; they are therefore competent evidence. The first branch of the objection raised is insufficient; it is *limited* and *special,* " that the evidence is incompetent;" the second branch of the objection is too general, " that the books of the deceased could not be proved in that way." We have shown that for one purpose the books were competent, and that the first objection fails. As to the handwriting of a deceased person, it is competent to prove it by any person who knows it. No objection was made to the competence of the witness to speak as to his knowledge of the handwriting, or as to the identity of the books. This objection is not, therefore, good. There were several objections of this kind in substance, but the answer to them is covered in the view we have taken.

In the controversy, on the trial, as to payments made to the testator by one James Hall, Hall had been sworn as a witness, and in accounting for the amount of money he had received and paid the testator, he testified to having sold his crop of rye in the winter of 1841, at nine shillings and sixpence per bushel. To impair this testimony, the plaintiff had attempted to show the price of rye at that time to be much lower, in the Troy and Albany markets and elsewhere; and for this purpose offered a file of papers, obtained from the Young Men's Association of Troy, for the years 1840 and 1841, and a Washington county

Terry *v.* McNiel.

paper, published at Salem, at about those dates; from which it appeared that the price of rye was about 55 to 57 cents per bushel. The evidence from the files of the Albany *Argus*, only, was objected to as irrelevant and immaterial, and witness not competent.

The case of *Lush* v. *Druse*, (4 *Wend.* 314,) was an action of covenant for rent, payable in wheat. On the trial, a witness was introduced to prove the value of wheat in Albany on the day of the rent becoming due, in four successive years. The witness knew nothing of the price of wheat, of his own knowledge, but testified to the prices in those years as derived by him from the books of large dealers in wheat at Albany. This proof was objected to as insufficient. Savage, Ch. J., held this proof, uncontradicted, to be sufficient. In the case of *Cliquot's Champagne*, (3 *Wallace*, 115,) it was held that printed prices current, obtained from the agent of the manufacturer of wine, or from dealers in the manufactured article generally, which have been prepared and used by the parties furnishing them, in the ordinary course of business, are so far evidence of the value of the articles mentioned in them as that they may be submitted to a jury, as throwing light on the matter, and as some guides to candid men, and for their consideration. These authorities, I think—and they are not the only ones—justify the referee in receiving the evidence of the prices current, published at the time for public information, and for general purposes, in a public newspaper.

There were some rulings, in the admission of evidence by the referee, which, standing alone, uninfluenced by the effect of other testimony given in the case, might be regarded as erroneous rulings; such, for instance, as the entries in the mortgage book of Daniel Stevenson, deceased, of payments, and of interest accrued upon the bond and mortgage in question. Daniel Stevenson was the original mortgagee of the mortgage in question, and he

assigned it to the plaintiff's intestate. But before this testimony was offered, it had been proved that this book and the entries therein had been shown to the defendant, who had examined them, and had made no objection, claiming only that there was one receipt not so credited. The book was therefore admissible, not technically as a book, but as containing a statement of debt and credit between the parties, admitted to be correct to a certain extent by the defendant.

The referee also made several errors in favor of the appellant, but they are not before us. Upon the whole case, I think justice has been done, and that there were no such legal errors committed upon the trial, as to reqiure a reversal of the judgment. It should be affirmed.

Judgment affirmed.

[SARATOGA GENERAL TERM, June 6, 1870. *Rosekrans, Potter, Bockes* and *James,* Justices.]