JOSHUA HARRISON et al., Appellants, *v.* HENRY R. GLOVER et al., Respondents.

72   451
132  481

The market price of a marketable commodity may be determined as well by offers to sell, made by dealers in the ordinary course of business, as by actual sales; and statements of dealers in answer to inquiries as to price are competent evidence.

Plaintiffs, who were manufacturers of blankets, employed defendants to sell. By the contract the blankets were not to be sold at less than those made by D. & S. In an action upon the contract the referee found, in substance, that defendants sold to C. & Co. at thirty cents per pound. No sales had been made by D. & Co. at that price; but immediately before the sale the agent of D. & Co., on inquiry as to how they would sell, replied that they would sell as low as C. & Co. could get any blankets in the market; and upon further inquiry as to whether C. & Co. had better buy plaintiffs' blankets at thirty cents, advised them not to buy, as in two or three days he would sell as low or less. The agent of C. & Co. thereupon stated to the agent of defendants, through whom said sale was made, that he had no doubt he could buy D. & Co.'s blankets at thirty cents. *Held*, that the facts did not authorize a finding of an offer to sell the blankets of D. & Co. at thirty cents, and did not justify the sale; that while it was not necessary for defendants to prove an offer, which would be legally binding if accepted, they were bound, in order to establish their defense, to show an offer made in the usual course of business, having reference to a present sale, binding in honor, in case of immediate acceptance.

*Harrison v. Glover* (9 Hun, 196), reversed.

(Submitted January 30, 1878; decided February 12, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of defendants, entered upon the report of a referee. (Memorandum of decision below, 9 Hun, 196.)

This action was brought by plaintiffs, who were manufacturers of blankets, against defendants, who were commission merchants in the city of New York, to recover for an alleged unauthorized sale.

The referee found, in substance, the following facts:

That in or about the month of April, in the year 1869, the parties entered into a contract in writing, whereby, among other things, it was contracted and agreed by the defendants

that they would take all the goods manufactured by the plaintiffs at the Orange County Woolen Mills, for the period of two years thereafter. The plaintiffs agreed to deliver such goods at the store of the defendants ; and it was expressly agreed " that the blankets shall not be sold for less than those made by Dobson & Scofield, of Philadelphia, at the proper time for selling the same." That in pursuance of such agreement the defendants received, at various times, to sell for the plaintiffs, large amounts of their manufactured goods, and particularly at one time the quantity of eighteen thousand nine hundred and ninety pounds of blankets, which they sold on account of plaintiffs on the 2d day of November, ber, 1870, to the firm of H. B. Claflin & Co., at thirty cents per pound, with four per cent upon the amount of such sales to be deducted therefrom. During the time of the operation of the agreement aforesaid, the blankets of Dobson & Scofield, at the proper time of selling the same did not sell, and were not actually sold in the market except at auction, at less than thirty-five cents per pound, with a deduction of five per cent, but said blankets were sold at auction during the month of November, 1870, at the price of thirty-two and one-half cents per pound at four months. Immediately prior to the above-mentioned sale, the agent of Claflin & Co. inquired of the agent of Dobson & Scofield how low he would sell Claflin & Co. two or three hundred bales of Dobson's blankets, to which said agent replied that he was going to sell that number, and would sell them to said firm as low as any blankets they could get in the market. Thereupon the agent of Claflin & Co. asked the agent of Dobson & Scofield if he had better buy the plaintiffs' blankets at thirty cents, said agent advised said firm not to buy them, saying he would be back to New York in two or three days and would sell them as low or less, as they were going to clear them out. Said agent of Claflin & Co. stated to the defendants' agent, through whom said sale of the 2d November, 1870, was made, that he had no doubt that he could buy Dobson & Scofield's blankets at thirty cents.

As conclusions of law the referee found, among other things, that the conversation between the agent of Claflin & Co. and the agent of Dobson & Scofield amounted to an offer, and the expression of a willingness on the part of said last-named agent to sell the blankets of his firm at thirty cents per pound, and fixed the market-price thereof in the same manner and with the same effect as such market-price would have been fixed by an actual sale of the said blankets, and justified said sale of the blankets of the plaintiffs by the defendants.

Further facts appear in the opinion.

*Walter C. Anthony*, for appellants. The contract should be construed most strongly against the defendants. (16 J. R., 172.)

*Daniel T. Walden*, for respondents. To ascertain or establish the price of the goods it was not necessary to prove a sale. (*Cliquot's Champagne*, 3 Wall., 117, 140; *Funnerstern's Champagne*, 3 id., 145; *Lush v. Druse*, 4 Wend., 313.) An offer to purchase may be some evidence of value. (*Hotchkiss v. Ger. F. Ins. Co.*, 5 Hun, 90; *Terry v. McNeil*, 58 Barb., 241; *Whelan v. Lynch*, 60 N. Y., 469, 474.)

ANDREWS, J. The restrictive clause in the contract that the blankets should not be sold " for less than those made by Dobson & Scofield, of Philadelphia," was inserted for the protection of the plaintiffs. They were to send their blankets to the defendants in New York, who were to sell them and account to the plaintiffs for the price for which they should be sold, deducting five per cent from the billed price. They were to be sold in competition with the blankets of Dobson & Co. The clause in question was inserted to prevent the defendants from making sales at a less price than that at which the blankets of Dobson & Co. were held in the market. The price of the Dobson & Scofield blankets could be determined as well by offers to sell, made by Dobson &

Co. in the ordinary course of business, as by actual sales. A price-list, stating the price at which a manufacturer will sell, or statements of dealers in answer to inquiries, are competent evidence of the market-price of a marketable commodity, and is a common way of ascertaining or establishing a market-price. (*Cliquot's Champagne*, 3 Wall., 143 ; *Lush* v. *Druse*, 4 Wend., 313.) It was competent for the parties to provide that the price of Dobson & Co.'s blankets, as ascertained by actual sales only, should govern the price of the plaintiffs' blankets. But the parties did not understand this to be the meaning of the contract, as is apparent from the letter of the defendants to the plaintiffs, of November 2, 1870, and the subsequent interview between the parties. This letter, written on the day the sale was made, of which the plaintiffs complain, states that Dobson & Co. *offer* their blankets at "thirty cents per pound, less four per cent at four months," and that "we shall feel it our duty to you to allow the price of your goods not to go lower." At the interview between the parties a few days afterwards, the plaintiffs complained of the sale as having been made at too low a price, and stated that they did not believe "it was Wilson's price," and a proposition was made to go and see Wilson, who was the agent for the sale of Dobson & Co.'s blankets, and ascertain whether it was his price. The plaintiffs did not claim that if these blankets were sold at the price for which Dobson & Co.'s blankets were offered the defendants were not justified in making the sale. The plaintiffs desired to sell their blankets. It could not have been expected that the sales made by the defendants would be at the precise times of sales made by Dobson & Co. The defendants could readily ascertain, by inquiry, the price at which the blankets of Dobson & Co. were held, but they might not be able to know of actual sales, or the prices obtained. Were they to forego the opportunity to sell the plaintiffs' goods, or sell them only at the peril of loss, in case it should turn out that the last previous sales made by Dobson & Co. were at higher rates than the then market-price of

their goods. We are of opinion that the construction put upon the contract by the referee, viz., that the defendants were authorized to sell the plaintiffs' goods at the same prices at which the goods of Dobson & Co. were sold, or offered in the market, is the correct one. Either actual sales of Dobson & Co.'s blankets, or their market value, as ascertained by *bona fide* offers to sell, established the price. The sale of which the plaintiffs complain was made November 2, 1870, to Claflin & Co., at thirty cents per pound, four per cent off. The referee finds that up to that time Dobson & Co.'s blankets had not been sold in the market for less than thirty-five cents per pound, deducting five per cent ; but on the ninth of November there was an auction sale of a large quantity of these blankets at thirty-two and one-half cents per pound, at four months, and it appears that Claflin & Co. were the principal purchasers at the sale. The referee, however, finds that immediately before the sale by the defendants of the second November, the agent of Claflin & Co. inquired of the agent of Dobson & Co. how he would sell the firm of Claflin & Co. two or three hundred bales of Dobson's blankets, to which the agent replied that he was going to sell that number, and would sell them to Claflin & Co. as low as any blankets they could get in the market. Thereupon the agent of Claflin & Co. asked the agent of Dobson & Co. if he had better buy the plaintiffs' blankets at thirty cents, and the agent advised said firm not to buy them, and said that he would be back to New York in two or three days, and would sell them as low, or less, as they were going to clear them out, and the agent of Claflin & Co. afterwards stated to defendants' agent, through whom the sale of November second was made, that he had no doubt that he could buy Dobson & Co.'s blankets at thirty cents. The referee finds, as a conclusion of law, that this conversation between the agent of Claflin & Co. and the agent of Dobson & Scofield, amounted to an offer by the latter to sell the Dobson & Co.'s blankets at thirty cents per pound, and that such offer fixed the market-price, and justified the sale in

question.   We think this conclusion is not warranted by the facts found.   There was no negotiation between Claflin & Co. and the agent of Dobson & Co. for a present purchase of blankets.   Claflin & Co. made no offer to buy, and the agent made no offer to sell.   The most that can be claimed from the conversation is, that the agent offered to sell at a future time at thirty cents or less, but the offer was made manifestly as a means of retaining a chance to sell the goods on his return from Philadelphia, where, as it appears, he was going, if he should then deem it for his principals' interest, or they should think it best to make the sale.   It was not a present unconditional offer to sell, and the subsequent conduct of the parties shows that it was not so understood. The agent returned from Philadelphia in a few days, and immediately advertised the auction sale.   The agent of Claflin & Co. saw him, but made no allusion to the previous conversation, and in answer to a question, whether in the interview with Dobson & Co.'s agent, after he had returned from Philadelphia, he referred to the prior conversation, said, " of course not, he had determined to put them in the auction rooms."   We are of opinion that the transaction found by the referee was not an offer by Dobson & Co.'s agent, which established the price of their goods.   The plaintiffs cannot be bound by so indefinite a transaction.   It was not necessary that the defendants should prove an offer which would be legally binding if accepted by them, but they were bound, in order to establish a defense, to show that an offer was made, in the usual course of dealing and business, having reference to a present sale, binding in honor in case of an immediate acceptance.   Nothing less would give the plaintiffs the protection which the contract was designed to secure.

The judgment should be reversed, and a new trial granted.

All concur.

Judgment reversed.