By the Court .—Truax, J.
It was alleged in the complaint, and the plaintiff attempted to prove on the trial, that the defendant destroyed a vessel which belonged to him, in order to obtain certain insurance which he had effected on that vessel. As part of his case, the defendant called a witness, Myer, who was a seaman and shipmaster and who was acquain ted with the market value of vessels in New York, and asked him whether he had made defendant an offer for the purchase of his vessel. *457 He testified that he had made such an offer, and then was asked, “ What price did you offer ? ” This question was objected to by the plaintiff, on the ground that it was incompetent. The objection was overruled, and the plaintiff excepted.
It has been held that an offer to sell a thing is some evidence of the value of that thing (Harrison v. Glover, 72 N. Y. 451), and there is no reason why an offer to buy should not have at least as much weight as an offer by the owner to sell.
The defendant was also allowed to show, under the objection and exception of the plaintiff, that three years before he had paid ten thousand dollars for this ship at a private sale. It was not error to receive this testimony. Hoffman v. Conner, 76 N. Y. 121. The vessel was no longer in existence, and the defendant offered the best evidence that he could offer under the circumstances of the case. He showed the cost and the condition of the vessel at the time it was destroyed, and so brought himself within the decision of the court of appeals in Jones v. Morgan, 90 N. Y. 4. Moreover, the point at issue was not the value of the vessel, and the question of value became relevant only as it tended to show the motive of the defendant in destroying his vessel, if he did destroy it. We think that it was not error to allow the defendant to show what he had paid for the vessel.
The court was asked to charge, in substance, that every man is presumed by the law to know the value of his own property, and a difference between actual value and an amount insured for, which is more than one third above the actual value, may be regarded as a willful and fraudulent representation, unless satisfactorily explained; and that if the ship in the month of April, 1883, was not worth more than ten thousand dollars and was insured for sixteen thousand dollars, such over-insurance would in itself be evidence of fraud. (See the first, second and third requests to charge.)
We think that these requests, as well as the fifth *458 request,* were charged in substance when the court charged the jury that in determining this question of fraud, it was important for them to consider “ what the defendant would have had to gain by her destruction, as opposed to what he would have lost by that event; whether it would be better for him to have the cash from those policies without the obligation to pay the drafts or without their maturing by the arrival of the ship, or was it better for him in his judgment to keep his property and continue his business. If the latter was the case he had no motive to set the ship on fire. If the former was the case, you must find out how much the motive was, what it actually amounted to, and how much it weighed on him in connection with the other facts in the case. He had raised $5,500 on this vessel and got the money for the drafts. If the vessel did not reach St. Johjis, he would owe nothing on these drafts because the condition of the obligation to pay was that she should get to St. Johns.”
This was all that the plaintiff was entitled to have charged. If the defendant misrepresented the value of the vessel, it was a fraud on those to whom he made the misrepresentations—that is, it was a fraud on the insurance companies from whom he obtained his policies of insurance. But he obtained no policy of insurance from the plaintiff in this action, and he made no representations to the. plaintiff. And there is no evidence -that the plaintiff was influenced by any representations, and, therefore, whether they were or were not fraudulent is immaterial.
A witness named Pfaff was called by the plaintiff. The plaintiff had alleged in its complaint and attempted to show on the trial, that Pfaff - had set the boat on fire on *459 the instigation of the defendant. Pfaff declined to tell how the fire arose, for fear that he might criminate himself. He was then asked by the plaintiff’s counsel if he had had any conversation before this time—that is, before the time of the fire—with the defendant in regard to setting fire to this vessel, and the court instructed the witness that if he answered that question he might be obliged to answer the other question. To this instruction the plaintiff took an exception.
We do not think that the court erred in informing the witness—which was the substance of the instruction—of his (the witness’) rights and obligations. If we look at the ruling as a ruling not to compel the witness to answer, there was no error committed. The testimony tended to show that the witness had committed a crime. It was a link in the chain of testimony showing that fact, and he could not be compelled to disclose any portion of the evidence that might help to convict him of an offense.
The appellant sought to offer in evidence a deposition which showed, in effect, that on another occasion this witness had testified to something which was a waiver of the privilege which he claimed on this trial. This was objected to as incompetent, the objection was sustained and the plaintiff excepted.
We think that there was no error in this ruling. The witness had not waived his privilege by testifying on another occasion, nor wras what he had testified to on another occasion admissible as evidence on this trial. The testimony given by the witness on the former examination could only be used for the purpose of contradicting the testimony given by him on this examination or of refreshing his memory, neither of which contingencies existed on this trial. Grattan v. Metropolitan Life Insurance Co., 92 N. Y. 287.
The judgipent and order appealed from are affirmed with costs.
Dugro, J., concurred.

 The 5th request to charge was as follows:
“Fifth.—These master’s drafts were equivalent to insurance on the ship, and were not payable unless the ship arrived at her destination. So far as this case is concerned they are equivalent to an insurance to the extent of $5,115, which was paid before the happening of any loss.”