BENJAMIN GOLDFARB et al., Plaintiffs, *v.* THE CAMPE
CORPORATION, Defendant. ·

(City Court of the City of New York, Trial Term, March, 1917.)

Personal Property Law — " Sales Act "— contracts — damages — date
of delivery — actions — Laws of 1911, chap. 571, § 148 (2, 3).
Contracts — written — action for breach of — trial — jury — damages
— evidence.
Evidence — when admissible — trial — contracts — jury.

That portion of the Personal Property Law, commonly known
as the " Sales Act " (Laws of 1911, chap. 571), including sec-
tion 148 thereof, applies to contracts for the future delivery of
goods.

Where the buyer under such a contract, upon notification
from the seller that it will make no deliveries, has commenced
an action to recover damages for breach of contract, he is under
no obligation to acquiesce in the seller's effort to withdraw its
renunciation or accept delivery when tendered on the contract
date.

Where the contract renounced relates to goods for which
there is an available market at the time and place set for
delivery, the law does not require the buyer to purchase goods,
give replacing orders, or to do anything to reduce his damages
below the difference between the contract price and the market
value at the time and place set for delivery.

Under section 148 of said " Sales Act " the buyer's duty to
do what he can to lessen his damage because of the seller's
renunciation of the contract applies only to cases in which there
was no available market at the time and place set for delivery,
where the goods could be purchased, or the buyer proposes to
plead and prove special circumstances tending to show proxi-
mate damages of a greater amount than the difference between
the contract price and the market price of the goods at the
time when they should have been delivered.

Subdivisions 2 and 3 of said section 148 do not authorize
the renouncing seller to either plead or prove special circum-
stances tending to show that the proximate damage, *i. e.*, the
loss which the buyer necessarily sustains, was less than the
difference between the contract price and the market price, even

though, before the date for any delivery arrived, the seller offered to do that which would enable the buyer to have full and prompt performance and avoid any loss at all.

The "anticipatory breach" of a contract for the future delivery of goods, through the seller's announced intention not to perform, does not fictitiously move the specifications of the contract, as to the time of performance, ahead to the time of such repudiation and enable the buyer to regard the seller as liable for failure to perform a new obligation to perform, as of the date of the repudiation; but the "anticipatory breach" does confer, though not necessarily, an optional right upon the buyer to sue to recover damages admeasured as though the contract calls for performance as of that date.

The provision of subdivision 2 of said section 148, that, in an action for failing to deliver goods, the buyer's measure of damages is the loss directly and naturally resulting in the ordinary course of events from the seller's breach of the contract, applies to goods for which there is an available market, only upon taking into account the provisions of subdivision 3 of said section by which the buyer of such goods is entitled to receive at least the difference between the contract price and the market price at the time and place of delivery and may recover a greater sum by pleading and proving special circumstances tending to show that his actual proximate loss was greater than that difference.

Under a written contract, pursuant to which defendant agreed to make installment deliveries of a certain number of cases of goods, the first installment was promised for February 15, 1917, and deliveries were to continue during the spring and be completed in June, 1917, but in December, 1916, when the conditions of prospective supply of the goods were very unfavorable, and it seemed possible that before the arrival of the time for the first delivery the shortage would force the market price far above the contract price and, perhaps, make deliveries impossible, defendant notified plaintiffs that it would make no deliveries under the contract. After the commencement of an action to recover damages for breach of the contract, but before the first installment would have been due, market conditions changed and defendant notified plaintiffs of its willingness to perform the contract in all respects, including deliveries at the contract price on each of the specified dates, and four days after the delivery date for the first two cases and before plaintiffs would have been entitled to receive any of the remaining cases under

the contract, the action was brought to trial. On granting a motion to set aside a verdict and to restore the case to the calendar for retrial, *held,* that the trial in advance of the delivery date did not preclude an award of compensatory damages measured by ascertainment of the probable market price on the future delivery date.

That error in the jury's ascertainment of that probable market price was one of the risks which the buyer assumed in seeking trial before the arrival of the delivery dates.

That plaintiffs were entitled to have the jury determine and award them for the first installment of two cases the difference between the contract price and the market price therefor on the delivery date, and also the jury's computation of the same difference as to the quantities deliverable on the dates enumerated in the contract down to June 1, 1917.

That the market price of the goods for immediate delivery on the renunciation date was not controlling, nor was the price at which plaintiffs could on that date have made replacing contracts for delivery on the date specified in the broken contract.

That plaintiffs to establish their damages were not required, on the renunciation date or at any time thereafter, to secure replacing contracts at the best market price obtainable for the whole or any part of the original contract, nor were they required to show the market price for the whole quantity of the agreed shipments by the indicated installment if sought to be procured from others.

That what the market price of the goods in suit would probably be upon the dates enumerated in the original contract would be for the jury to determine as best it could from the evidence adduced on either side.

That evidence of the market price and conditions on the first delivery date would obviously be admissible, as would likewise proof as to those prices and conditions before and after that date down to the day of trial.

That evidence of the market price on the day of renunciation, though admissible if not palpably too remote, would not be binding on the jury or fix automatically the recovery although, in the absence of proof as to later prices and conditions, it might sustain a verdict based on that figure on the theory of the presumed continuance of a condition not shown to have been changed.

That proof that inquiries among dealers in the goods had led

to a quoting of a price and the actual purchase of goods at that price, even for less than the contract quantity, would be admissible if relating to a time not too remote.

That competent evidence of the price at which, at the time of the trial, orders could be placed with responsible firms for delivery of the goods on the remaining delivery dates specified in the renounced contract would be admissible as an aid to the jury in reaching a conclusion as to what the price will probably be on the eventual date.

That competent evidence would be admissible of prospective changes in conditions of supply, demand and the like, affecting market value before the delivery dates.

That the offer of defendant to withdraw its repudiation and make delivery on the contract dates at the contract price was neither material nor competent upon the issue before the jury.

ACTION on the commercial calendar of the City Court to recover general damages for the breach of two executory contracts for the sale of goods.

Philip Goldfarb, for plaintiffs.

Arthur Furber, for defendant.

RANSOM, J. This controversy turns upon several interesting questions as to the practical working out of the rule of the damages recoverable for so-called "anticipatory breach" of contracts to sell and deliver goods — questions owing their novel form, if not their origin, to recent calendar improvements which enable the plaintiff in a commercial action to have a trial, if he so desires, well within a month from the time his cause of complaint arises. In June and July of last year, the defendant entered into written contracts to make installment deliveries of thirty-nine cases of goods to the plaintiffs. The first installment was promised for February 15, 1917; deliveries were to continue during the spring and be completed in June. In December, 1916, the defendant notified the plain-

tiffs that it would make no deliveries. Suit for damages for breach of the contract through this anticipatory notification was thereupon instituted by the plaintiffs. At the time of the December renunciation, the conditions of prospective supply of the goods were very unfavorable, and it seemed probable that before February arrived the shortage would force the market price far above the contract price and perhaps make deliveries impossible. After suit was started, but before the first installment would have been due, market conditions changed and the defendant notified the plaintiffs of its willingness to perform the contracts in all respects, including deliveries at the contract price on each of the specified dates. Four days after the delivery date for the first two cases and before the plaintiffs would have been entitled to receive any of the remaining thirty-seven cases under the contracts, the action was brought on for trial.

Under these unusual and apparently unadjudicated circumstances, the defendant contended, in substance, that although, under *Hochster* v. *De la Tour,* 22 L. J. (Q. B.) 455; *Roehm* v. *Horst,* 178 U. S. 1; *Windmuller* v. *Pope,* 107 N. Y. 674, and similar landmarks of that hard-fought battle ground of the law, the defendant's renunciation of its contract obligations gave the plaintiffs a right, at their election, to treat such announcement as a breach and thereupon to *bring suit* before any delivery date arrived, any award of more than nominal damages upon a trial in advance of the delivery dates could not be made, at least as to installments for which the delivery dates under the contract had not arrived at the time of trial. It was urged that, under section 148 of the portion of the Personal Property Law (Laws of 1911, chap. 571), commonly known as the Sales Act, an award of damages for non-delivery of commonly marketable goods cannot be made until

arrival of the delivery date has disclosed the market price which fixes ''the upper boundary'' in any computation of the buyer's recovery. Upon the facts of the instant controversy, the defendant accordingly contended (1) that inasmuch as the plaintiffs had given no replacing orders following the December renunciation and had pleaded no ''special circumstances'' within the meaning of section 148 they had sustained no damage at all, in view of the defendant's offer, in December, to perform fully the contracts, under which no delivery was called for until February fifteenth; and (2) that, irrespective of the plaintiff's right to start suit before the delivery date for the first installment, they could not, in a trial four days later, be awarded damages representing ''the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered'' (§ 148), as to any installments for which the delivery date had not actually arrived at the time of trial. On the other hand, the plaintiffs contended (1) that section 148 does not undertake to state the rule of damages applicable to an action begun and tried before the delivery date, and predicated on breach through anticipatory notification rather than failure to deliver; (2) that the defendant's attempted recantation did not require the plaintiffs to regard the contract as again in force; (3) that the doctrine of the buyer's duty to reduce his damage by accepting opportunities for replacing orders has no application to contracts for commonly marketable goods; and (4) that, at least in the absence of allegations or proof of special circumstances, the rule of damages applicable to (1) above is that indicated by *Masterton* v. *City of Brooklyn*, 7 Hill, 61; *Barnes* v. *Denslow*, 30 N. Y. St. Repr. 315, 318; affd., 130 N. Y. 687; *Boyd* v. *Quinn Co* . 18 Misc. Rep. 169; *Williams* v. *De Soto Oil Co.*, 213 Fed.

Repr. 194, 198; *Follansbee* v. *Adams,* 86 Ill. 13, and similar decisions, which seem to make the market price at the time of the breach the standard of comparison with the contract price, in measuring the plaintiff's loss through the defendant's anticipatory refusal to do something for which the time of performance has not arrived at the time of trial.

Commenting upon certain of the foregoing contentions as to which we have indications of judicial opinion, if not definite adjudication, I think it may be said, without elaboration of reasoning, or authority, to be the rule of this jurisdiction: (1) That the Sales Act (Pers. Prop. Law), including section 148 thereof, applies fully to contracts for the future delivery of goods (§§ 86, 126, 148, subd. 3); (2) that the buyer after renunciation and suit was under no obligation to acquiesce in the seller's effort to withdraw that renunciation or accept delivery when tendered on the contract dates; (3) that where the executory contract renounced related to goods for which there is an available market at the time and place set for delivery the law does not require the vendee to purchase their goods, give replacing orders, or do any thing to reduce his damages *below* the difference between the contract price and the market value at the time and place set for delivery (*Saxe* v. *Penokee Lumber Co.,* 159 N. Y. 371, 378, 379; Pers. Prop. Law, § 148); (4) that the rule of the vendee's duty to do what he can to mitigate his damage applies only, under section 148, to cases in which there was no available market where the goods could be bought and sold, at the time and place of delivery, or the vendee proposes to plead and prove " special circumstances showing proximate damages of a greater amount " than " the difference between the contract price and the market or current price of the goods at the time when they ought to have been

31

delivered;'' (5) that section 148, subdivisions 2 and 3, does not authorize the renouncing vendor to plead or prove '' special circumstances '' showing that the proximate damages (*e. g.,* the loss which the vendee necessarily sustained) was *less* than the difference between the contract price and market price, even though, before the date for any delivery arrived, the vendor offered to do that which would enable the vendee to have full and prompt performance and avoid any loss at all; (6) that '' anticipatory breach '' through announced intention to withhold performance does not fictitiously move the contract specifications of times for performance ahead to the time of such repudiation and enable the vendee to regard the vendor as liable for failure to perform a new obligation to perform as of the date of repudiation; '' anticipatory breach '' confers an optional right to sue as of that date, but not of necessity to recover damages admeasured as though the contract called for performance as of that date (*Roper* v. *Johnson,* L. R. [8 Com. Pl.] 167; *Brown* v. *Muller,* L. R. [7 Ex.] 319; *Josling* v. *Irvine,* 30 L. J. Ex. 78; *Boorman* v. *Nash,* 9 B. & C. 145; *Leigh* v. *Paterson,* 8 Taunt. 540); and (7) that although in an '' action for failing to deliver goods,'' subdivision 2 of section 148 provides that '' the measure of damages is the loss directly and naturally resulting in the ordinary course of events from the seller's breach of contract,'' this is applicable to goods for which '' there is an available market,'' as for the goods here in controversy, only upon taking into account the provisions of subdivision 3, by which the buyer of such goods is entitled to receive *at least* '' the difference between the contract price and the market price '' at the time and place of delivery and may recover a greater sum by pleading and proving special circumstances showing that his actual proximate loss was greater than that

difference. 2 Sedg. Dam. (9th ed.) § 636d *et seq.*; Williston Sales, §§ 584–587, 599; Wald's Pollock Contracts [Williston's 3d Ed.], 369.

Novelty attaches to the instant suit by reason of the fact that the plaintiffs press their case to trial before the " market or current price " at the times the goods should have been delivered had been disclosed by the arrival of the specified days. The rule laid down in section 148, declaratory of common-law authorities such as *Roehm* v. *Horst,* 178 U. S. 1; *Windmuller* v. *Pope,* 107 N. Y. 674; *Todd* v. *Gamble,* 148 id. 382; *Parsons* v. *Sutton,* 66 id. 92, has been often applied to actions *begun* before, but *tried* after, the delivery period. I cannot, however, regard trial before the arrival of part, or any, of the delivery dates, as authorizing the application of a different rule of damages than that declared in section 148. The *Masterton* case and others like it do not state a rule in any event applicable to executory contracts for the delivery of goods commonly obtainable in the market; they state, if anything with precision, the rule applicable to certain of the circumstances where " anticipatory breach " confers a right of action for the value of the contract lost through such repudiation — the difference between the contract figure for performance and the market cost of performance, of contracts outside the purview of section 148, subdivision 3. In other words, if one party to a contract is engaged in performing, or is to perform, thereunder certain work or supply certain materials, not in the nature of goods possessing a market value within the purview of subdivision 3, advance renunciation by the adverse party may be held to entitle the contractor to the value of the contract to him of the date when he was notified to do nothing further thereunder; but the *Masterton* case states no rule superseding the plain provision of sec-

City Court of New York, March, 1917.     Vol. 99.

tion 148. On the other hand, trial in advance of the delivery date does not seem to me to preclude the award of compensatory damages, measured by ascertainment of the probable market price on the future delivery date. The question therefore becomes one of *evidence,* rather than of *rule;* the difficulty is inherent in the doctrine of "anticipatory breach," but the right to have the damage rule applied arises from acceptance of the doctrine at all. Error in the jury's ascertainment of the probable current price on the future date is one of the risks which the vendor assumes in advance renunciation and the vendee assumes in seeking trial before the delivery date arrives.

In the case at bar, therefore, the plaintiffs were entitled to have the jury determine and award them, at the trial four days after the delivery date for the first installment of two cases, the difference between the contract price and the market price for the two cases on the delivery date, and also the jury's computation of the same difference as to the quantities deliverable on the enumerated dates down to June first. The market price of the goods for immediate delivery on the renunciation date was not controlling, nor was the price at which the plaintiffs could, on that date, have made replacing contracts for delivery on the dates specified in the broken contracts. To establish their damages, the plaintiffs were not required, on the renunciation date or at any time thereafter, to secure replacing contracts at the best market price obtainable, for the whole or any part of the original contracts (*Saxe* v. *Penokee Lumber Co.,* 159 N. Y. 371), nor were they required to show the market price for the whole quantity of the agreed shipments, by the indicated installments, if sought to be procured from others. *Dana* v. *Fiedler,* 12 N. Y. 40. The plaintiffs

would have had a right, I think, although that is not
necessarily decided here, to fix definitely the measure
of their damage by securing replacing orders for the
whole contract quantity, as soon as possible after
renunciation, although it has been held that if they had
done so, and had become thereby obligated to pay more
than the market price for the goods on the delivery
date when it actually arrived, they could recover only
the difference between the original contract price and
the price on the delivery date, no matter what replac-
ing contracts had fairly cost them at the time of
renunciation. *York–Draper M. Co. v. Lusk,* 6 Kan.
App. 629. What the market or current price of the
goods in suit would probably be upon the date enu-
merated in the original contracts would be for the
jury to determine, as best it could, from the evidence
adduced on either side. Such a determination is at
least no more speculative, difficult and uncertain than
a discharged employee's probable earnings during the
portion of a contract unexpired at the time of trial.
The market price and conditions on the first delivery
date would obviously be admissible in the case at bar;
likewise proof as to those prices and conditions, before
and after that date, down to the day of trial. The mar-
ket price on the day of renunciation would thus be
admissible, if not palpably too remote. It would not
be binding on the jury, or fix automatically the extent
of the recovery, as the plaintiffs claim, although, in the
absence of proof as to later prices and conditions, it
might sustain a verdict based on that figure on the
theory of the presumed continuance of a condition not
shown by the vendor or vendee to have changed, even
as the discharging employer has the burden of show-
ing that his liability should be diminished by earnings
of the discharged employee during the remainder of
the contract term. Proof that inquiries among dealers

in the goods had led to the quoting of a price and the actual purchase of goods at the price, even for less than the contract quantity, would be admissible, if relating to a time not too remote. *Goldstein* v. *Arkell & Douglass, Inc.,* N. Y. L. J. March 30, 1917. "A price-list, stating the price at which a manufacturer will sell, or statements of dealers in answer to inquiries, are competent evidence of the market-price of a marketable commodity, and is a common way of ascertaining or establishing a market-price." *Harrison* v. *Glover,* 72 N. Y. 451. Competent evidence of the price at which, at the time of trial, orders could be placed with responsible firms for delivery of the goods on the remaining delivery dates specified in the renounced contracts would be admissible — not on the theory of mitigation, but as an aid to the jury in reaching a conclusion as to what the price will probably be on the eventual dates. Competent evidence would be admissible of prospective changes in conditions affecting market value before the delivery dates — conditions of supply, demand, and the like.

On the other hand, the offer of the defendant, at the end of December, to withdraw its repudiation and make deliveries on the contract dates at the contract price, does not seem to me material or competent upon the issue before the jury. Such an offer has no competency or bearing, as we have seen, unless as index of market price on the delivery dates from February fifteenth to June first. Emanating as it did from the defendant in the action, after the vendee had treated the contract as broken by renunciation and had brought suit therefor, the offer of the defendant has only the status of a December offer of replacing contracts, and it comes from a source so interested and provocative of such suspicion that the courts have commonly denied its admission to the record at all on the question of market value.

In view of the vigor and ability with which the foregoing aspects of the case have been discussed in the submitted briefs, it has seemed fair to make a summary of my conclusions concerning them. In a number of respects which need not be itemized the rulings made upon the trial will be perceived to have been radically at variance with what should have been in the light of the conclusions enforced by a more careful examination of the subject. It follows that the verdict rendered should be set aside, and the case restored for retrial. An order to this effect may be submitted, setting the case down for trial before me, in Trial Term, Part III, on April 12, 1917, or sooner if mutually desired.

Ordered accordingly.