RIDLEY WATTS and Others, Respondents, *v.* PHILLIPS-JONES CORPORATION, Appellant.

Second Department, January 9, 1925.

Sales — action by sellers for refusal to accept cotton cloth — sale made by plaintiffs for account of another — plaintiffs are real parties in interest under Code of Civil Procedure, § 449 (now **Civil Practice Act,** § 210) — evidence — market price — trade paper properly admitted in evidence after preliminary proof — question that trade paper did not give price at point of shipment not raised — nothing to show that price at point of shipment and price at New York city were different — not error to exclude certain shirts from evidence in absence of proof that they came from plaintiffs' goods — costs — plaintiffs entitled to extra allowance under Civil Practice Act, § 1513.

In this action to recover for the failure of the defendant to accept cotton cloth purchased from the plaintiffs in which it appears that the plaintiffs made the sale for the account of a third person, the plaintiffs are the real parties in interest, within section 449 of the Code of Civil Procedure (now section 210 of the Civil Practice Act), and the action was properly brought by them, since it appears that while the sale was made for the account of a third person, the transactions between the parties hereto were apparently conducted on the basis that the plaintiffs were the sellers and not the agents for the sellers, or at least that the plaintiffs were general agents authorized to act in all matters affecting

the contract for and on behalf of the third person, and even to bring and maintain an action in their own names for the benefit of the said third person.

"The Daily News Record" was properly admitted in evidence to establish the market price in the city of New York of the goods sold, for the purpose of enabling the jury to fix the difference between the contract price and the market price, since the preliminary proof, supplied by two expert witnesses called by the plaintiff, was to the effect that such paper was recognized in the industrial trade as accurately stating the market price of such merchandise as was the subject of this action.

The objection by the defendant that the market price proven was not the market price at the point of shipment in South Carolina was not made at the trial and comes too late on appeal. Furthermore, there is nothing in the record to show any difference in price at the point of shipment in South Carolina and at New York city, at which point the price was proven.

It was not error for the court to exclude from evidence certain shirts offered by the defendant claimed to have been made from some of the goods manufactured pursuant to the contract, for it was not sufficiently proved that the shirts came from the plaintiffs' goods, and furthermore if they were made from goods furnished by the plaintiffs, the goods from which they were made had been delivered and accepted by the defendant, and were not the subject of this suit, except to the extent that that particular delivery was embraced in a counterclaim which the jury decided against defendant and as to which determination no complaint is made on appeal.

The plaintiffs are entitled to an extra allowance of costs under section 1513 of the Civil Practice Act.

APPEAL by the defendant, Phillips-Jones Corporation, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 7th day of December, 1923, upon the verdict of a jury; also from an order entered in said clerk's office on the 23d day of November, 1923, denying the defendant's motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the 6th day of December, 1923, granting plaintiffs' motion for an extra allowance under section 1513 of the Civil Practice Act.

*Abel E. Blackmar* [*I. Henry Kutz, Hugo Hirsh, Emanuel Newman* and *Benjamin Reass* with him on the brief], for the appellant.

*Eugene W. Leake* [*Edward A. Craighill, Jr.*, with him on the brief], for the respondents.

KAPPER, J.:

The action, vendor against vendee, was brought to recover damages for the vendee's refusal to accept a quantity of cotton cloth sold to it by the plaintiffs. Plaintiffs obtained a verdict which, in our opinion, finds ample support in the evidence. Some of the objections to plaintiffs' recovery, which this appeal presents, seem to justify an expression of opinion.

It is urged that the cause of action sued upon does not belong to the plaintiffs for the reason that the plaintiffs were the disclosed

agents for a specified principal, and were, therefore, not the real party in interest. The contract of sale was, as follows:

" WATTS, STEBBINS & CO.
        " Selling Agents
    " 44–46 Leonard St., N. Y. C.
                " NEW YORK, *April 16th,* 1920.

" Watts, Stebbins & Co. have sold for the account of No. 5234, Victor Monaghan Mills, Victor Plant,
" To Phillips-Jones Company, Inc.,
        " 829 East 134th Street,
                " New York City, N. Y.

" Quantity 300,000 Yards Fancy Shirtings    Price $1.50 lb.
" Standard construction                            Terms Net — 10 days
" Quality First                      .            Freight none    ,
    " Delivery Start November — sooner if possible — 6 /8% weekly. Construction and styles subject to mill's approval, and to conform to mill's regular yarns.

" F. O. B. mill or at mill in case of embargo, lack of shipping facilities or shipping instructions.

" Shipping Instructions Later.

" 10% Tailings if made at contract price.

" 5% Seconds if made at 5% less than contract price.
" WCH.    It is Agreed:

" 1. That if the production of the seller, the Victor Monaghan Mills, Victor Plant, shall be curtailed between the date hereof and the end of the deliveries stipulated herein by strikes, lockouts, accidents, fire, flood, casualties, shortage of labor, or any other cause beyond the reasonable control of the mill, aside from those particularly mentioned, a like proportionate reduction in deliveries may be made.

" 2. That default, delay or defect in any one or more deliveries shall not affect the balance of this contract. Partial deliveries are to be paid for at contract price and terms.

" 3. That goods delivered and not removed are at purchaser's risk and are covered by insurance to the same extent and under the same conditions as those owned by the mill. The mill does not guarantee the solvency of the insurance companies nor assume any other liability in respect to such insurance.

" 4. That invoices are payable in New York Exchange.
                " Yours truly
        " WATTS, STEBBINS & CO.
                " W. C. HOUSTON, JR."

A duplicate of the contract, also in evidence, was signed by the defendant.

Second Department, January, 1925.     [Vol. 211

On its face the contract describes the plaintiffs as having sold for the account of a particular principal to the defendant. The particular principal of the account is further characterized by the name of the mill which was the manufacturer of the goods. The contract, however, was made with the plaintiffs, in their name, and signed by them. The question presented was first raised at the opening of the trial and again on the motions to dismiss made at the close of the plaintiffs' case and at the conclusion of the reception of the evidence. Upon the trial numerous witnesses occupying important executive posts in the Victor Monaghan Mills testified on behalf of plaintiffs and in support of the contract and its fulfillment. Amongst them were the vice-president and general manager, the head of the manufacturing department, the superintendent of the Victor plant of the Victor Monaghan Mills, the person in charge of the mill cloth room and the " head grader." Many other employees of the mill were in court and testified on behalf of plaintiffs, such as weavers and graders, and the depositions of a number of the mill employees were read in evidence in support of the plaintiffs' claim. Besides this, there were in evidence approximately one hundred letters making up correspondence of the parties, in all instances being communications between these plaintiffs and this defendant in all of which the plaintiffs were regarded as the actual sellers, and nowhere was it claimed that the defendant looked to the mill as having any obligation in the matter. Amongst the documentary evidence are shown payments made directly to the plaintiffs and to their order by the defendant for a portion of the goods that had been delivered under and pursuant to the contract. The correspondence further shows that the defendant's accounts under the contract in question were entered on the plaintiffs' books as a transaction with the plaintiffs and without reference to the mill. All complaints regarding the quality of the goods were lodged with the plaintiffs and the defendant's attempt to cancel the contract for alleged breach thereof was based upon an alleged breach by plaintiffs personally; indeed, in finally concluding not to accept the goods sold, notice thereof was given by the defendant to the plaintiffs personally. In one of the letters addressed to plaintiffs defendant indicates plaintiffs' responsibility for the breach and the defendant's belief that the situation justified a claim for damages against the plaintiffs. There is also to be found in the documentary evidence suggestions by the defendant to plaintiffs to arbitrate and to make various adjustments and corrections of price, all of which ordinary agents empowered simply to sell the goods of their principal would not be authorized to do.

A consideration of the evidence leads us to the conclusion that

the plaintiffs were more than a mere agent authorized to find a customer to purchase the principal's merchandise. The contract was made with them and in their name. The dealings were wholly with them, including all claims and adjustments, as well as payments in part to them, as already found. It cannot be assumed that the written contract was made, in legal effect, with the Victor Monaghan Mills through the plaintiffs acting as their mere naked agent. As the case stands, we think that the plaintiffs come within one of the exceptions of section 449 of the Code of Civil Procedure (now section 210 of the Civil Practice Act) as interpreted by well-recognized authority. Section 449 (*supra*), in force at the commencement of this action, provided as follows: " Every action must be prosecuted in the name of the real party in interest, except that an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue, without joining with him the person for whose benefit the action is prosecuted. A person, with whom or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section."

In *Schipper* v. *Milton* (51 App. Div. 522; affd., 169 N. Y. 583) it was said by the Appellate Division (p. 523): " The first objection made by the appellants is, that the plaintiffs had no standing in court to maintain this action. The allegation of the complaint was, that on the 29th of January, 1894, the plaintiffs entered into an agreement with the defendants whereby they agreed to sell and the defendants agreed to buy a certain quantity of hemp; that the terms of the contract would more fully appear from the sold note of a broker, ' a copy of which is hereto annexed * * * and which is to be taken as a part of this complaint.' It appears by the sold note, which, by this allegation, is to be read as part of the complaint, that the contract was made by the plaintiffs as agents for Messrs. W. F. Stevenson & Co., Manila, and that this firm was in fact the seller of this hemp to the defendants and that the plaintiffs made the contract for them. This brings the case precisely within section 449 of the Code of Civil Procedure, which provides that a trustee of an express trust may sue without joining with him the person for whose benefit the action is prosecuted, and defines a trustee of an express trust as a person with whom or in whose name a contract is made for the benefit of another. Within the plain reading of this section of the Code, the plaintiffs having made this contract for the benefit of W. F. Stevenson & Co. were entitled to maintain this action."

In *Albany & Rensselaer Co.* v. *Lundberg* (121 U. S. 451) the

United States Supreme Court, by Mr. Justice GRAY, after quoting section 449 of the New York Code of Civil Procedure, say (p. 454): " Under this provision, the Court of Appeals of that State has held that an agent of a corporation, to whom, ' as executive agent of the company,' a promise is made to pay money, is ' a person with whom, or in whose name, a contract is made for the benefit of another,' and may therefore sue in his own name on the promise. *Considerant* v. *Brisbane,* 22 N. Y. 389. The rule thus established is applicable to actions at law in the courts of the United States held within the State of New York. Rev. Stat. § 914;* *Sawin* v. *Kenny,* 93 U. S. 289; *Weed Sewing Machine Co.* v. *Wicks,* 3 Dillon, 261; *United States* v. *Tracy,* 8 Benedict, 1. The case then stands thus: If the agreement to sell is an agreement made by Lundberg personally, and not in his capacity of agent of the Swedish firm, the price is likewise payable to him personally, and the action on the contract must be brought in his name, even at common law. If, on the other hand, the agreement must be considered as made by Lundberg, not in his individual capacity, but only as agent and in behalf of the Swedish firm, and for their benefit, then the price is payable to him as their agent, and for their benefit, in the same sense in which an express promise to pay money to him as the agent of that firm would be a promise to pay him for their benefit, and therefore, by the law of New York, which governs this case, an action may be brought in his name. In either view, this action is rightly brought."

In *P. N. Gray & Co., Inc.,* v. *Cavalliotis* (276 Fed. 565) it appeared that the plaintiff was in the export trade acting as agent for foreign principals for the purchase and shipment of various commodities. The defendant contracted with the plaintiff to sell it sugar. The contract recited that plaintiff was " acting as agents for Picard & Co., Zurich," Switzerland. The contract was signed by the plaintiff, " by Wallace H. Foster, Secretary." Upon suit brought by the plaintiff upon this contract, objection was made that the plaintiff, as agent, could not sue individually. COOPER, District Judge, after citing various New York cases, and quoting section 449 (*supra*), said (at p. 568): " Whether considered as a personal contract or a contract with an agent, the defendant cannot be relieved from liability. If the former, the recovery is payable to the agent personally; if the latter, it is payable to him as agent for Picard & Co. * * * Even if the complaint does not specifically allege that the plaintiff is suing as trustee of an express trust, the contract is annexed to the complaint and made a part thereof, and

---

* U. S. R. S. § 914.— [REP.

specifically characterizes the plaintiff as agent for Picard & Co. and gives it standing in this court." (See, also, *Ladd* v. *Arkell*, 37 N. Y. Super. Ct. [5 J. & S.] 35, 40; *Funch* v. *Abenheim*, 20 Hun, 1, 4; *Meinhardt* v. *Excelsior Brewing Co.*, 98 App. Div. 308.)

Even were this an instance of an ordinary agent maintaining his principal's right of action, it must necessarily be said that the principal, if we were to so regard the mill, must be held to have had *knowledge* of the pendency of the suit and is, therefore, bound by the judgment. (Wells Res Adjud. 58, § 65.) But we prefer to rest the case upon the broader ground above indicated, and to hold that under the course of dealings between the parties, the plaintiffs were recognized by the defendant either as the real party in interest, or as possessing such a general agency as authorized them to act in all matters affecting the contract for and on behalf of the mill, and even to bring and maintain an action in their own name for the benefit of the mill.

It is next urged by appellant that a trade paper called " The Daily News Record," by which there was established the market price in the city of New York of the goods sold, and which enabled the jury to fix the difference between the contract price and the market price, was erroneously admitted in evidence. In support of this contention appellant relies upon the case of *Whelan* v. *Lynch* (60 N. Y. 469), where a trade paper called " Shipping and Price Current List " was held improperly admitted to show the market value of a commodity. The court, after saying that the paper should not have been admitted " without some proof showing how or in what manner it was made up; where the information it contained was obtained, or whether the quotations of prices made were derived from actual sales, or otherwise," added (per MILLER, J., p. 474) that " The credit to be given to such testimony must be governed by extrinsic evidence, and cannot be determined by the newspaper itself without some proof of knowledge of the mode in which the list was made out. As there was no such testimony the evidence was entirely incompetent, and should not have been received."

The record on appeal in *Whelan* v. *Lynch* (*supra*) shows that the paper was read in evidence upon its mere production, without any *extrinsic* proof that the paper possessed *the slightest reliability or authority.*

A reading of subsequent cases leads us to the conclusion that by the use of the phrase " extrinsic evidence " the Court of Appeals did not intend to lay down a precise formula regarding the character

of the preliminary showing required to authorize the admission in evidence of a trade paper quoting market prices.

In *Harrison* v. *Glover* (72 N. Y. 451) it was said (per ANDREWS, J., p. 454): "A price-list, stating the price at which a manufacturer will sell, or statements of dealers in answer to inquiries, are competent evidence of the market-price of a marketable commodity, and is a common way of ascertaining or establishing a market-price."

In *Commonwealth of Virginia* v. *State of West Virginia* (238 U. S. 202) Mr. Justice HUGHES said (p. 212): "It is unquestioned that in proving the fact of market value, accredited price-current lists and market reports, including those published in trade journals or newspapers which are accepted as trustworthy, are admissible in evidence."

In *Blanding* v. *Cohen* (101 App. Div. 442, 444) it was said: "It was competent for the witness Shepard to refer to a newspaper for the purpose of refreshing his recollection as to the price of milk at a given time, proof having also been given that such paper was recognized by milkmen as the standard authority on the exchange price of milk. (*Terry* v. *McNeil*, 58 Barb. 241; *Harrison* v. *Glover*, 72 N. Y. 451.)"

In *Burns Mfg. Co.* v. *Clinchfield Products Corp.* (189 App. Div. 569), an action by purchaser against seller for damages for breach of contract of sale, a trade publication, the "Oil, Paint and Drug Reporter," published in the city of New York, and which purported to give the sales and quotations of the commodity each day, was offered in evidence to establish market value. Objection was made to the introduction of the paper on the ground that it was not shown that the reports were generally accurate. "Proof," says Mr. Justice SMITH, "was thereupon given upon both sides as to the reliability of this paper, and there was sufficient proof, I think, to authorize its receipt in evidence."

The record on appeal in the case last cited has been examined to ascertain the proof "given upon both sides as to the reliability" of the trade paper in question. On behalf of plaintiff, and as a basis for the admission of the paper, the testimony of an employee of the paper to the effect that his paper was accepted in the trade for the determination of the market prices, was all there was. On behalf of the defendant six witnesses engaged in the chemical business all testified explicitly that the paper was not a guide to market prices, that it was without reputation or standing with respect to accuracy of quotations, and that it was unreliable. So that, if the plaintiff's claim that the paper was a reliable guide was accepted as matter of law despite the testimony to the contrary, or whether the question of reliability was one of fact, we

think the *Burns Mfg. Co.* case a direct authority for the admission in evidence of a trade paper where there is a basis in the proof to show that the paper was relied upon by the trade as an accurate guide of market prices. Such evidence of preliminary showing was supplied in the case at bar by two expert witnesses called by the plaintiff, namely, Baldwin and Scheuer, both of whom testified that " The Daily News Record " is recognized in the textile trade as an accurate statement and " barometer " of market prices of such merchandise as was the subject of this action.

Appellant further contends that the plaintiffs " failed to prove the market price of the goods at the place of delivery."

The place of delivery was a town called Greer, in the State of South Carolina, which was the location of the Victor Monaghan Mills. The contract reads, " F. O. B. mill." The learned trial justice charged that " delivery was to be made at the mill by the plaintiffs to the defendant under the terms of this contract." Such is, therefore, the law of this case.

It is the claim of the appellant that the only proof of market value was the prices obtaining in the city of New York, and that, as delivery was to be made at this town in South Carolina, plaintiffs' proof should have shown market value there.

Ordinarily in an f. o. b. contract for the sale of goods, the measure of damages for a breach involving a refusal to accept is the difference between the contract price and the market price at the time and place of delivery. (*Orester* v. *Dayton Rubber Mfg. Co.*, 228 N. Y. 134; *Seaver* v. *Lindsay Light Co.*, 233 id. 273; *Standard Casing Co.* v. *California Casing Co.*, Id. 413.)

If there were anything in this record to show that there was any difference in the market price obtaining in the two places, the appellant's claim in this behalf would be serious. Not alone is there no such difference indicated in the record, but there is nothing from which it can be said that the point was raised or presented at the trial. In the circumstances, we think it was incumbent upon the defendant when plaintiffs were proving the market prices in the city of New York, to point out specifically its claim of error, if it thought that there actually and honestly was a difference in the market prices in the two communities. For it is clear from a perusal of the record that had this been called specifically to the attention of the court, the plaintiffs were in a position with numerous witnesses in court of an expert degree who were connected with the Victor Monaghan Mills at Greer, S. C., to establish the market prices in that town. We are of opinion that counsel for the defendant acquiesced in the theory

that the New York market price was the same as at Greer and was not an improper criterion for use in measuring the damages.

It is also urged by the appellant that error was committed in excluding some shirts which were claimed to have been made up from some of the goods manufactured in pursuance of the contract. We are in accord with the learned trial justice in his ruling. We think it was not sufficiently proved that the shirts came from the plaintiffs' goods to warrant their admission in evidence. It must also be borne in mind that these shirts, if they came from a delivery of plaintiffs' goods, were goods which the defendant accepted and paid for, and which are not the subject of this suit. That particular delivery was embraced in the defendant's counterclaim which the jury decided against it and of which determination no complaint is made on this appeal.

Many of the questions raised by the appellant not hereinbefore discussed, are readily determined adversely by the language of the contract, which provides that " defect in any one or more deliveries shall not affect the balance of this contract."

The order granting plaintiffs an extra allowance is not open to criticism and should not be disturbed.

The judgment and orders appealed from should be affirmed, with costs.

Present — KELLY, P. J., RICH, MANNING, YOUNG and KAPPER, JJ.

Judgment and orders unanimously affirmed, with costs.